IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified on Schedule "A," <br><br> Defendants. | Case No. 18-cv-02188 <br><br> Judge Joan B. Gottschall <br><br> Magistrate Judge Sidney I. Schenkier |

**MOVING DEFENDANTS' OMNIBUS MOTION TO DISMISS THE
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendants, belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store (collectively, the "Moving Defendants"), pursuant to FED. R. CIV. P. 12(b)(1), (4), (5) and (6), respectfully seek dismissal of the Amended Complaint [D.E. 12] with prejudice, and in support state:

**INTRODUCTION**

Dismissal is proper for two main reasons. First, Plaintiffs have failed to establish the Court's subject matter jurisdiction over their Lanham Act claims by competent proof, or in the alternative, have failed to state a claim as to – among others – both the Lanham Act's and the Illinois Uniform Deceptive Trade Practice Act's extraterritorial reach. If the Court dismisses Plaintiffs' Lanham Act claims – the only causes of action that fall within its original jurisdiction – on any basis, the Court should also exercise its discretion to relinquish supplemental jurisdiction over Plaintiffs' remaining state law claim. Second, none of the Moving Defendants have been

properly served with process as required by applicable law, and even assuming that the means of service was proper, which it is not, the process itself is fatally deficient.

## ARGUMENT

**I.     PLAINTIFFS' CLAIMS ARE PREMISED ON STATUTES THAT CANNOT REACH THE MOVING DEFENDANTS EXTRATERRITORIALLY.**

"When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).[1] "State laws [of Illinois] too . . . presumptively lack extraterritorial reach." *Hirst v. Skywest, Inc.*, 15 C 02036, 2016 WL 2986978, at *8 (N.D. Ill. May 24, 2016) (quoting *Morrison*, 561 U.S. at 255) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184-85 (2005) ("[T]he long-standing rule of construction in Illinois [ ] holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute[.]) (internal quotation omitted)). Since Plaintiffs have failed to allege any conduct by Moving Defendants as having the required degree of effect on either U.S. or Illinois commerce, the Lanham Act and the Illinois Uniform Deceptive Trade Practice Act ("IDTPA") cannot reach those Defendants extraterritorially.

**A. The Lanham Act Cannot Reach The Moving Defendants Extraterritorially.**

Both Lanham Act provisions at issue in this lawsuit apply only to uses "in commerce . . . ." 15 U.S.C. § 1114(1)(a)-(b); 15 U.S.C. § 1125(a)(1). The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Congress, in turn,

---

[1] "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. This principle . . . . rests on the perception that Congress ordinarily legislates with respect to domestic, not foreign matters. Thus, unless there is the affirmative intention of the Congress clearly expressed to give a statute extraterritorial effect, we must presume it is primarily concerned with domestic conditions." *Morrison*, 561 U.S. at 255 (internal quotations and string citations omitted). *See also Glass v. Kemper Corp.*, 133 F.3d 999, 1000 (7th Cir. 1998) (noting that federal statutes "presumptively lack extraterritorial reach.").

2

may regulate "those activities having a substantial relation to interstate commerce, . . . *i.e.*, those activities substantially affect[ing] interstate commerce." *U.S. v. Morrison*, 529 U.S. 598, 609 (2000) (internal quotations and citation omitted). Thus, the Lanham Act extends to purported acts of infringement outside the United States only if they have substantially impacted U.S. commerce. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 287-88 (1952) (construing the word "commerce" as used in 15 U.S.C. § 1114(1)); *Scotch Whiskey Ass'n v. Barton Distilling Co.*, 489 F.2d 809, 812-13 (7th Cir. 1973) (construing "commerce" as used in 15 U.S.C. § 1125(a)). *See also McBee v. Delica Co., Ltd.*, 417 F.3d 107, 120 (1st Cir. 2005) (requiring allegedly infringing activities by a foreign defendant to have a "substantial effect on United States commerce"); *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956) (same).[2]

In *Steele*, the defendant, a U.S. citizen, assembled and sold counterfeit "Bulova" watches after moving his watch business from Texas to Mexico. 344 U.S. at 284-85. He obtained components for the watches from the United States, intentionally stamped each watch produced with the trademarked letters "Bulova," and sold them as Bulova watches in Mexico. *Id.* at 285. Bulova Watch Company's Texas sales representative received numerous complaints from retail jewelers along the border whose customers brought defective Bulova watches in for repair, which upon inspection were not products of that company. *Id.* The Supreme Court determined that the Lanham Act could reach Steele's activities, primarily because he was a U.S. citizen. *Id.* at 282 ("Petitioner concedes, as he must, that Congress in prescribing standards of conduct for American citizens may project the impact of its laws beyond the territorial boundaries of the United States.").

---

[2] *Cf. U.S. v. Hoskins*, 16-1010-CR, 2018 WL 4038192, at *23 (2d Cir. Aug. 24, 2018) (determining that "(1) when a statute includes some extraterritorial application, that application is limited by the statute's terms, and [ ] (2) remedial provisions must be analyzed independently to discern whether they permit extraterritorial application.") (citing *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2107 (2016)).

3

Although the Supreme Court has been silent on the issue after *Steele*, several U.S. Circuit Courts of Appeal have since developed multi-factor tests to determine whether the Lanham Act can be applied extraterritorially. *See, e.g.*, *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.*, 549 F.2d 597 (9th Cir. 1976) (applying seven-part balancing test); *Vanity Fair*, 234 F.2d 633 (applying three-part balancing test). The Second Circuit's widely-adopted test in *Vanity Fair*, for example, clearly and concisely identifies the factors that should be considered:

> (1) [whether] the defendant's conduct had a substantial effect on United States commerce;
>
> (2) [whether] the defendant was a United States citizen [ ]; and
>
> (3) [whether] there was no conflict with trade-mark rights established under [applicable] foreign law[.]

*Vanity Fair*, 234 F.2d at 642. Notably, the Second Circuit added, "the absence of one of the above factors might well be determinative and [ ] the absence of both [two] is <u>certainly fatal</u>." *Id.* at 643 (emphasis added) (recognizing that the "rationale of the [*Steele*] Court was "thoroughly based on the power of the United States to govern the conduct of its own citizens upon the high seas or even in foreign countries . . . ." *Id.* at 642-43 (internal quotation omitted)). *See also Juicy Couture, Inc. v. Bella Intern. Ltd.*, 930 F. Supp. 2d 489, 508 (S.D.N.Y. 2013) (applying *Vanity Fair* and holding that $3,000 in U.S. sales made by defendants who hosted a website in English and made allegedly infringing products available for shipping to the U.S. – "a portion of which consists of the sales made to Plaintiff's investigators" – did not have a substantial effect on U.S. commerce).

The Seventh Circuit has not yet devised its own test for determining the Lanham Act's extraterritorial reach, nor has it adopted a test used by any other Circuit. *ACG Products, Ltd. v. Gu*, 10-CV-716-WMC, 2011 WL 7748354, at *3 (W.D. Wis. Nov. 4, 2011) ("Perhaps due to its location in the center of the country, there is little law from the Seventh Circuit interpreting *Steele* or otherwise discussing the jurisdictional scope of the Lanham Act."). Absent a definitive

4

balancing test from the Seventh Circuit, the Northern District of Illinois has consistently "adhered to the test that originated with the Supreme Court's decision in [*Steele*] and was more fully developed in the Second Circuit case of [*Vanity Fair*]" when faced with questions concerning "whether the Lanham Act reaches foreign business activities[.]" *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co., Ltd.*, 191 F. Supp. 3d 790, 805 (N.D. Ill. 2016) (citing multiple cases).

The Seventh Circuit has addressed the Lanham Act's extraterritorial reach only once, in *Scotch Whiskey*. There, plaintiff, a Scottish producer of Scotch whiskey, sued defendant, a Delaware-incorporated American company. *Scotch Whiskey*, 489 F.2d at 811. Defendant produced and marketed spirits in the U.S. and abroad, including Scotch whiskey sold under plaintiff's "House of Stuart" trademark. *Id.* Defendant supplied its exclusive distributor in Panama with "House of Stuart" labels and bottles shipped from the United States, and Scotch malts shipped from directly Scotland. *Id.* In Panama, the distributor mixed the Scotch malts with local spirits and sold the product – without permission – under a "House of Stuart" label. *Id.* Defendant challenged subject matter jurisdiction, arguing that the Lanham Act did not apply because finished goods bearing the infringing label did not enter U.S. interstate commerce, but instead entered and affected only the commerce of Panama (where the counterfeit Scotch malts were produced). *Id.* The Seventh Circuit disagreed, noting that while the product's blending and labeling occurred in Panama,[3] the "commerce involved began with the defendant's acts in the United States and continued to the ultimate distribution of the whiskey." *Id.* at 812.[4]

---

[3] The Circuit Court also noted that the sales of the product occurred within the Panama Canal Zone, then an unincorporated U.S. territory, and that "the trademark laws of the United States have the same force and effect in the Canal Zone as in the continental United States." *Scotch Whiskey*, 489 F.2d at 812-13.

[4] The Moving Defendants, in an abundance of caution, move to dismiss Counts I, II, and III of the Amended Complaint based on the Lanham Act's and IDTPA's lack of extraterritorial reach under **both** FED. R. CIV. P. 12(b)(1), for lack of subject matter jurisdiction, and 12(b)(6), for failure to state a claim.

5

As such, the Supreme Court and Seventh Circuit have established clear parameters for determining when the Lanham Act can cover allegedly infringing conduct abroad: where the component parts of an infringing product are obtained in or supplied from U.S. territory, **and** are supplied or sold by an American defendant.[5] *See Steele*, 344 U.S. at 285; *Scotch Whiskey*, 489 F.2d at 811-12; *see also Vanity Fair*, 234 F.2d at 642 (noting that a defendant's foreign citizenship "might well be determinative" in bringing the case entirely outside of the Lanham Act's ambit). Under any variation of the *Steele* standard, for the Lanham Act to extend to the Moving Defendants, Plaintiffs must plead a substantial effect on U.S. commerce resulting from each one of the Moving Defendants' alleged conduct abroad – something that Plaintiffs' allegations poignantly lack. *See Atl. Richfield Co. v. Arco Globus Int'l Co., Inc.*, 150 F.3d 189, 193 (2d Cir. 1998) (stating that *Steele* "does not hold that a [foreign] defendant's domestic activity, even if "essential" to infringing activity abroad, is alone sufficient to cause a substantial effect on United States commerce").

"Consistent with *Steele and Scotch Whiskey*, [the substantial effects] factor is most commonly met by allegations that the infringing end products produced in a foreign country subsequently entered the United States or one of its territories." *ACG Products, Ltd.*, 2011 WL

---

Both the Supreme Court and multiple U.S. Circuit Courts of Appeal, including the Seventh, have consistently treated the Lanham Act's extraterritorial reach as being an issue of subject matter jurisdiction. *See, e.g., Steele*, 344 U.S. at 281 ("The issue is whether a United States District Court has jurisdiction to award relief . . . ."); *Scotch Whiskey*, 489 F.2d at 813 (casting the appeal in entirely jurisdictional terms); *McBee*, 417 F.3d at 111 ("We hold that subject matter jurisdiction under the Lanham Act is proper only if the complained-of activities have a substantial effect on United States commerce . . . ."); *Reebok Intern., Ltd. v. Marnatech Enterprises, Inc.*, 970 F.2d 552, 554 (9th Cir. 1992); *Vanity Fair*, 234 F.2d at 638-39. However, Judge Kennelly of this Court recently analyzed this issue as a "merits question" under Fed. R. Civ. P. 12(b)(6), *IPOX Schuster, LLC*, 191 F. Supp. 3d at 804, despite acknowledging that the "[C]ourt's research has not turned up any [case] in which a court in this circuit analyzed the extraterritorial scope of the Lanham Act on a motion to dismiss for failure to state a claim under rule 12(b)(6)." *Id.* "On a motion to dismiss pursuant to [Rule] 12(b)(1), the [C]ourt is not bound to accept the truth of the allegations in the complaint. Rather the plaintiff has the obligation to establish jurisdiction by competent proof . . . ." *Commodity Trend Serv., Inc. v. Commodity Futures Trading Com'n*, 149 F.3d 679, 685 (7th Cir. 1998).

[5] Plaintiffs acknowledge that, and all of the Moving Defendants are in fact, non-U.S. entities that "reside in the People's Republic of China[.]" Am. Compl. [D.E. 12] at ¶ 28.

7748354, at *3. Applying this standard, Plaintiffs' Amended Complaint falls short. "In contrast, [the Amended] [C]omplaint does not allege an effect – substantial or otherwise – on United States commerce." *Id.* at * 4. Aside from broadly claiming that "[e]ach of the Defendants . . . is engaging in interstate commerce," Am. Compl. [D.E. 12] at ¶ 2, the Amended Complaint is void of any specific allegation concerning how any of the Moving Defendants' conduct affects U.S. commerce. "Nor does the [Amended] [C]omplaint contain any other allegations suggesting that the counterfeit product was purchased by American citizens and transported back to the United States or otherwise imported into the United States." *ACG Products, Ltd.*, 2011 WL 7748354, at *4.

Without referencing any Moving Defendant or any particular course of alleged conduct, Plaintiffs broadly allege, in a conclusory manner without any further particularization or support, that "on information and belief, each Defendant has sold Counterfeit Products into the United States, including Illinois," Am. Compl. [D.E. 12] at ¶ 37, and that:

> Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive, commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell Counterfeit Products to consumers within the United States, including the State of Illinois.

*Id.* at ¶ 28. To overcome a motion to dismiss Lanham Act claims for failure to state a claim, as this Court has aptly noted, "[first,] the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests," and "[s]econd, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face." *Brickstructures, Inc. v. Coaster Dynamix, Inc.*, 16 CV 10969, 2017 WL 4310671, at *4 (N.D. Ill. Sept. 28, 2017) (Gottschall, J.) (citing FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))

7

(dismissing Lanham Act claim under 15 U.S.C. § 1125, because "[t]here is no way that this case can go forward in this court unless plaintiff can allege a non-speculative Lanham Act injury").

The "facial plausibility" standard of the second prong "requires the plaintiff to allege facts that add up to 'more than a sheer possibility that a Defendant has acted unlawfully.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). A plaintiff "must allege facts sufficient to "raise a right to relief above the speculative level[,]" *id.* (citing *Twombly*, 550 U.S. at 555, 570), and a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting in part *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, *they must be supported by factual allegations*." *Id.* at 679 (emphasis added) (citing *Marco Bicego S.P.A. v. Kantis*, 17-cv-00927-SI, 2017 WL 2651985, at *2 (N.D. Cal. Jun. 20, 2017)).

Here, Plaintiffs never particularly allege *how* any purported conduct by any Moving Defendant affects U.S. commerce. Am. Compl. [D.E. 12] at ¶¶ 2, 28, 37; *Steele*, 344 U.S. at 285; *Scotch Whiskey*, 489 F.2d at 811-12; *Vanity Fair*, 234 F.2d at 642. Plaintiffs are silent as to critical details such as – to name a few – what exactly each of the Moving Defendants had sold, how the products allegedly sold (if any) violated Plaintiffs' trademarks (if at all), when such purportedly infringing sales were made, to where, and to whom, and how Plaintiffs have suffered harm as a result of the Moving Defendants' alleged conduct. Plaintiffs do not in fact identify a single instance of either a sale or an offer for sale of any allegedly infringing product by any Moving Defendant, or of any particular harm or injury they have suffered as a result of any alleged conduct by the Moving Defendants. *See* Am. Compl. [D.E. 12] at ¶¶ 2, 38, 45. It is impossible to tell, based on the Amended Complaint, what any of the Moving Defendants has allegedly done.

8

There is, in sum, "no allegation that [any] counterfeit product has entered the United States in a way that would have an effect on commerce[,]" much less any such product produced or sold by any of the Moving Defendants. *ACG Products, Ltd.*, 2011 WL 7748354, at *4 (also noting that "sales the defendant made into the United States induced by the plaintiff for purposes of litigation [are] insufficient to establish effect on United States commerce") (citing *McBee*, 417 F.3d at 120). Permitting such deficient allegations to pass muster would not only eviscerate the requirement that the Moving Defendants be given "fair notice of the claim[s] [against them] and the grounds upon which [they] rest[ ]," *Brickstructures, Inc.*, 2017 WL 4310671, at *4, it would also enable these and other plaintiffs to corral countless other foreign parties like the Moving Defendants into future litigation based on nothing more than "naked assertions devoid of further factual enhancement," mere "labels and conclusions[,]" or "a formulaic recitation of the elements of a cause of action[.]" *Id.*; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.[6]

Finally, this Court has specifically addressed and rejected applying the Lanham Act to the conduct of "foreign citizens acting abroad," like the Moving Defendants. *Alcar Group, Inc. v. Corporate Performance Systems, Ltd.*, 109 F. Supp. 2d 948, 950 (N.D. Ill. 2000). In that case, the Alcar Group ("Alcar"), a U.S. corporation, designed and marketed specialized software. *Id.* at 949. It named Corporate Performance Systems ("CPS"), a British firm, as its exclusive distributor of

---

[6] "Without an adequate allegation that [they have] sustained an injury within the reach of the Lanham Act, it is unclear that [P]laintiff[s] [have] articulated an Article III case or controversy. To meet that requirement, [P]laintiff[s] 'must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.' That requirement is rooted in Article III's limitation of the judicial power of the United States to actual cases and controversies and is 'the irreducible constitutional minimum of [Article III] standing.'" *Brickstructures, Inc.*, 2017 WL 4310671, at *4 (quoting in part *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). *See also Rolon v. Henneman*, 517 F.3d 140, 148-149 (2d Cir. 2008) (noting that "conclusory allegations or legal conclusions masquerading as factual conclusions" are insufficient to state a claim (internal quotation marks omitted)).

9

Alcar Group's software in Britain and South Africa. *Id.* A few years later, Alcar terminated the license agreement and its relationship with CPS. *Id.* at 950. After the parties' business relationship ended, CPS sold Deutsche Bank (an existing Alcar client) Alcar's software under a contract which CPS misrepresented as being an arrangement with Alcar. *Id.* Deutsche Bank complained to Alcar in Illinois when it had problems with the software, and, out of concern about its reputation and goodwill, Alcar spent a considerable amount of money to fix the software. *Id.*

Alcar sued CPS, alleging violations of the Lanham Act under 15 U.S.C. §§ 1125(a), (c), and 1114(1). *Id.* CPS moved to dismiss for lack of subject matter jurisdiction, arguing that Alcar – a U.S. corporation – could not maintain a Lanham Act action against CPS – a foreign (British) corporation – for trademark infringement because the alleged infringement occurred entirely abroad and did not affect U.S. commerce. *Id.* at 949. Alcar argued that CPS's conduct affected its "ability to do business in the United States with Deutsche Bank," which affected United States commerce because "anything, including injury to its goodwill, that affects its ability to do business anywhere affects its ability to [do] business here in the United States." *Id.* at 951. Noting that "[t]he question comes down to the effect on United States commerce," this Court rejected Alcar's argument and granted dismissal, concluding that the effect of CPS's alleged conduct on U.S. commerce was too remote and tenuous. *Id.* at 949, 951-52 ("In a global economy, the activities of foreigners abroad relating to an American multinational may indeed have some effect on American commerce. But I cannot ignore the language about the power of Congress to regulate the conduct of American citizens in particular in *Steele* and in Seventh Circuit cases on extraterritorial jurisdiction under the Lanham Act[.]") (also citing *Scotch Whiskey*, 489 F.2d at 812).[7]

---

[7] The *Alcar* Court expressly framed the issue as follows: "[c]an a United States corporation maintain a Lanham Act action against a foreign corporation for alleged trademark violations that occurred entirely abroad on no more showing than that these hurt the plaintiff's ability to conduct its business and license its

Plaintiffs here have alleged even less than Alcar. The Amended Complaint contains not a single allegation concerning how the Moving Defendants' alleged activities abroad would, or could bear any kind of nexus to Plaintiffs' purported harms, in the U.S. or otherwise. To the extent that Plaintiffs broadly allege damages to their "reputations and goodwill," Am. Compl. [D.E. 12] at ¶¶ 3, 44, 45, 50, 54, Plaintiffs make no reference to how any one of the Moving Defendants may have contributed – if at all – to such unspecified harms, or how any share of such alleged damages – to the extent attributable to any one of the Moving Defendants – may have had any "effect on United States commerce." *Alcar Group*, 109 F. Supp. 2d at 951.

The Amended Complaint makes no specific reference to what any Moving Defendant had supposedly done, much less how their purported conduct or any alleged harm resulting from such conduct would significantly affect U.S. commerce so as to trigger the Lanham Act's extraterritorial application. "On [Plaintiff's position], Congress can write trademark legislation for the world if activities by any foreign citizen in any foreign country have any effect, however remote and tenuous, on United States commerce. I don't think so." *Id.* at 952.

**B. The IDTPA Cannot Reach The Moving Defendants Extraterritorially.**

Under the "express provisions of the statute," the IDTPA has no "clear intent" of extraterritorial application, and thus has none. *Robinson v. DeVry Educ. Group, Inc.*, 16 CV 7447, 2018 WL 828050, at *3 (N.D. Ill. Feb. 12, 2018); *see also Avery*, 216 Ill. 2d at 184-85; *Morrison*, 561 U.S. at 255. Therefore, the IDTPA cannot be applied here based on the same reasons and pleading deficiencies as why the Lanham Act provisions at issue cannot be applied against the

---

products worldwide?" *Alcar Group*, 109 F. Supp. 2d at 949. Applying the presumption that federal statutes lack extraterritorial reach, the Court answered in the negative. *Id.* at 950.

11

Moving Defendants, which have been fully discussed in Section I.A., and which are fully incorporated by reference in this section.[8]

Moreover, if this Court dismisses the only causes of action that fall within its original jurisdiction (here, the Lanham Act claims in Counts I and II), it is within the Court's discretion to relinquish supplemental jurisdiction over Plaintiffs' remaining state law claim. *See* 28 U.S.C. § 1367(c)(3) ("[A] district court[ ] may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction."). "Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Smith v. Fusion Med. Spa, S.C./Synergy Inst.*, 836 F. Supp. 2d 773, 778 (N.D. Ill. 2011); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Since only the Lanham Act claims fall within the Court's original jurisdiction, if the Court dismisses those claims, the Court should exercise its discretion and decline supplemental jurisdiction over Plaintiffs' remaining state law claim under IDTPA.

## II. DEFENDANTS WERE IMPROPERLY SERVED WITH DEFICIENT PROCESS.

The Lanham Act does not authorize nationwide, much less worldwide service of process. *Am. Bridal & Prom Indus. Ass'n, Inc. v. The Partnerships & Unincorporated Associations Identified on Schedule A*, 192 F. Supp. 3d 924, 931 (N.D. Ill. 2016). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Plaintiffs acknowledge, as

---

[8] "Where, as here, [Plaintiffs'] factual allegations under the [IDTPA] also form the basis for [their] claim under the Lanham Act, the legal inquiry is the same under both statutes. Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act." *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013) (internal quotations omitted). Plaintiffs' IDTPA claim "must rise or fall based on [their] Lanham Act claim[s]." *Id.* (quoting *Dynamic Fluid Control Ltd. v. Int'l Valve Manuf., LLC*, 790 F. Supp. 2d 732, 739 (N.D. Ill. 2011)). "[T]he Court need not address" the federal and state claims separately. *Id.*

they must, that Moving Defendants are non-U.S. entities that "reside in the People's Republic of China[.]" Am. Compl. [D.E. 12] at ¶ 28. Here, Plaintiffs' method of service fails to comply with FED. R. CIV. P. 4(f)(3), because it is prohibited by international agreement.

Both the United States and China are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention"). The Hague Convention has the force of federal law, and limits available methods of service under FED. R. CIV. P. 4(f)(3). *Water Splash Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) ("The Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies.") (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (noting that "compliance with the Convention is mandatory in all cases to which it applies.")); *see also Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004); *Ackermann v. Levine*, 788 F.2d 830, 838 (2nd Cir. 1986). The Hague Convention applies where, as here, both the origination and destination states of the documents at issue are contracting states to the Convention.

The Hague Convention permits service only by the following means: via a central authority (Articles 2-7), diplomatic and consular agents (Articles 8-9), mail or through a judicial official of the State of destination if the destination State does not object (Article 10), methods allowed by other applicable international agreement (Article 11), and other means as allowed by the internal laws of the destination State (Article 19). *See Water Splash Inc.*, 137 S. Ct. at 1508 (reviewing permitted service methods). "The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state." *Schlunk*, 486 U.S. at 700. China

13

formally objects to all methods of service identified under Article 10, including service by mail.[9] The Hague Convention also prohibits service by website publication and service by e-mail here.[10] These service methods are not permitted under Article 19, because China's internal laws prohibit serving process by e-mail without a defendant's consent, and prohibit service by website publication unless a plaintiff has exhausted other means of service. *See* Art. 87 & Art. 92, Civil Procedural Law of the People's Republic of China (2017 Am.) ("P.R.C. Civil Procedure Law").[11]

Further, under Article 277 of the P.R.C. Civil Procedure Law, "*no foreign* [non-P.R.C.] *agency or individual may serve documents* . . . within the territory of the People's Republic of China without the consent of the in-charge authorities of the People's Republic of China." *Id.* at Art. 277 (emphasis added); *Rockefeller Tech. Investments (Asia) VII v. Changzhou Sinotype Tech. Co., Ltd.*, 233 Cal. Rptr. 3d 814, 826 (Ct. App. 2018) (quoting the same Article under its pre-revision numbering [Article 261] with approval and taking judicial notice of the Article). Here, the foreign (non-Chinese) Plaintiffs' unilateral attempt at serving process in a foreign civil proceeding on the Moving Defendants (all of whom are Chinese) in China by direct e-mail and

---

[9] *See* Official Website of the Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (re-printing China's formal opposition to "the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention"); *see also Mapping Your Future, Inc. v. Mapping Your Future Services, Ltd.*, 226 F.R.D. 305, 308 (D.S.D. 2009) ("[T]he court finds that sending a copy of a summons and complaint by [electronic] mail to a defendant in a foreign country is not a method of service of process permitted by the Hague Convention."). China's formal objection has been held valid. *See DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981), *cert. den.*, 454 U.S. 1085.

[10] Article 11 of the Hague Convention is inapplicable here because the U.S. and China have entered into no other treaty concerning the service of process. Plaintiffs' method of service also clearly does not fall under the scope of Articles 2-9 (*i.e.*, service by a central authority or by consular agents).

[11] 中华人民共和国民事诉讼法(1991 年 4 月 9 日第七届全国人民代表大会第四次会议通过 根据 2017 年 6 月 27 日第十二届全国人民代表大会常务委员会第二十八次会议《关于修改〈中华人民共和国民事诉讼法〉和〈中华人民共和国行政诉讼法〉的决定》第三次修正)。Accessible in original form on the official website of the National People's Congress of the People's Republic of China, http://www.npc.gov.cn/npc/xinwen/2017-06/29/content_2024892.htm.

website publication – all without the consent of appropriate local authorities in the P.R.C. – amounts to precisely the type of "self-help" by a foreign party that Article 277 of the P.R.C. Civil Procedure Law would categorically prohibit.

"[T]he validity of service of a document abroad through postal channels depends first on the law of the forum. This is clearly confirmed by the history of the Convention negotiations . . . ." *Caterpillar Inc. v. Brington Indus. Ltd.*, 112CV01185SLDJAG, 2013 WL 11239258, at *4 (C.D. Ill. Sept. 27, 2013).[12] "[I]n permitting the utilization of postal channels provided the State of destination does not object, the draft convention did not intend to pass on the validity of this mode of transmission under the law of the forum state: *in order for the postal channel to be utilized, it is necessary that it be authorized by the law of the forum state.*" *Id.* at * 4-5 (emphasis added) (quoting 1 Bruno A. Ristau, *International Judicial Assistance* § 4-3-5 205 (rev. 2000)); *Brockmeyer v. May*, 383 F.3d at 804 (same). Because Plaintiffs' method of service is prohibited by the Hague Convention, it is insufficient under FED. R. CIV. P. 4(f)(3) and 12(b)(5).[13]

## CONCLUSION

Based on the foregoing, Defendants, belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store respectfully request that this Court dismiss Plaintiffs' Amended Complaint with prejudice.

---

[12] Quoting with approval Conclusions and Recommendations Adopted by the Special Commission on the Practical Operation of the Hague Apostille, Evidence and Service Conventions at 55 (Oct. 28 – Nov.4, 2003); Practical Handbook 202 (2006)).

[13] Under the Hague Convention's framework, China officially requires that "all documents and evidence to be served [in the P.R.C.] must be written in Chinese or that a translation in Chinese be attached thereto, unless there are contrary prescriptions in the mutual treaties between China and other Contracting States of the Hague Convention." Hague Conference on Private International Law, China – Central Authority & Practical Information, https://www.hcch.net/en/states/authorities/details3/?aid=243. None of the documents purportedly served by the Plaintiffs were written in Chinese, or contained any attached translation in Chinese. Thus, even assuming proper service (which has not occurred here), the process itself is defective and/or insufficient under FED. R. CIV. P. 12(b)(4).

Date: September 13, 2018

                                                Respectfully submitted,

belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store

By: */s/*          *Xingjian Zhao*
                    One of their Attorneys

Michael Diaz, Jr.
Xingjian Zhao
DIAZ, REUS & TARG, LLP
100 Southeast Second Street
3400 Miami Tower
Miami, Florida 33131

Mary-Lisa Sullivan
Danielle S. McKinley
ROBERTS MCGIVNEY ZAGOTTA LLC
305 N. Peoria Street
Suite 200
Chicago, IL 60607

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 13th day of September 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

By: */s/*          *Xingjian Zhao*
                    Xingjian Zhao