**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | ) ) ) | Case No. 18-cv-02188 |
| Plaintiffs, | ) ) | **Judge Joan B. Gottschall** |
| v. | ) ) ) | **Magistrate Judge Sidney I. Schenkier** |
| XIONG HUA PING, et al., | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. ("Plaintiffs") submit their response to Defendants belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store ("Defendants") Motion to Dismiss the Amended Complaint [102]. Pursuant to this Court's Order [110], Plaintiffs' below Response will only address the service issue from Defendants' Motion.

## INTRODUCTION

Defendants are unknown China-based AliExpress[1] online marketplace operators that offered for sale, sold, and shipped products using counterfeit trademarks to the United States. Trademark counterfeiting is a widespread and massive problem for Plaintiffs and virtually every other well-known brand due to vast numbers of online sellers in China. Specifically, 86 percent of all global counterfeit products originate in China and Hong Kong markets, and China and Hong

---

[1] AliExpress (www.aliexpress.com) is a global retail marketplace that enables consumers from around the world to buy directly from manufacturers and distributors primarily based in China. The United States is listed as a top consumer market. AliExpress is a business of Alibaba Group. *See* https://alibabagroup.com/en/about/businesses.

Kong accounted for 78 percent of the estimated $1.2 billion value of all seizures in 2017. Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶¶ 3-4. One of the few effective mechanisms to combat the epidemic of China-based online counterfeiters are lawsuits filed in United States Federal Courts. Plaintiffs have filed over one hundred such lawsuits disabling over 120,000 China-based Internet stores since 2012.[2] The law is well-established regarding the ability to bring actions against China-based online counterfeiters in U.S. Federal Courts, including serving defendants electronically pursuant to Fed. R. Civ. P 4(f)(3).

On March 28, 2018, Plaintiffs moved this Court for permission to effectuate service of process on the unknown Defendant AliExpress store operators pursuant to Federal Rule of Civil Procedure 4(f)(3) via email and electronic publication. Plaintiffs' Motion [21] was supported with legal authority in the accompanying Memorandum [22] and Declaration [23] ("First 4(f)(3) Memorandum"). On April 11, 2018, this Court granted Plaintiffs' Motion. [29]. As a result, Defendants received prompt notice of this case, which is particularly important given the expedited injunctive relief sought by Plaintiffs. Indeed, shortly after receiving electronic notice of this Case, Defendants promptly responded to Plaintiffs and/or obtained attorneys to discuss settlement prior to retaining their current counsel.

Defendants' Motion ignores the legal authority cited in Plaintiffs' 4(f)(3) Memorandum [22], and argues that the exclusive method for service of a China-based individual or entity is under the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). This would require that the Chinese Central Authority serve documents on the physical address of Defendants, a process that

---

[2] Since 2012, over 500 such cases have been filed in this District. Gaudio Declaration at ¶ 5. Hundreds of similar cases have been filed in other districts as well. *Id*.

takes 1-2 years.[3]  First, pursuant to Article I of the Hague Convention, it does not apply since Defendants' physical addresses were unknown.  Even if Defendants' physical addresses were known, electronic service is proper under Fed. R. Civ. P 4(f)(3).  Neither Fed. R. Civ. P. 4 nor any other rule requires that a party first attempt service through the Hague Convention.  Finally, service via email and electronic publication is not prohibited by international agreement (or Chinese law) and comports with constitutional notions of due process.  The Internet and email did not even exist in 1965 when the Hague Convention was implemented, and Circuit and District Courts across the United States have repeatedly rejected the notion that China's objection on service via postal mail extends to email.

Defendants' suggestion that brand owners must complete the impossible task of unmasking China-based Internet store operators and taking years to effectuate service would effectively leave brand owners without remedy against the rampant online counterfeiting described above. Defendants should not be able to insulate themselves from any harm that they cause in the United States simply by locating themselves within the borders of China or any other country outside the United States.  Defendants' Motion must be denied.

## BACKGROUND

Defendants are unknown China-based AliExpress online marketplace operators that offered for sale, sold and shipped products using counterfeit versions of Plaintiffs' Trademarks to sell sunglasses (Counterfeit Products") to the United States.   Gaudio Declaration at ¶ 2.

---

[3] Even if defendants had known addresses, the standard turnaround time for service in accordance with the Hague Convention in China is now between 1 and 2 years.  Gaudio Declaration at ¶ 16.  *See also Sulzer Mixpac AG v. Medenstar Indus. Co.,* 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (noting that the plaintiff had submitted materials to Chinese Central Authority eight months prior, "however, plaintiff has no indication on when service might be effectuated").

Defendants operate their Internet stores in the English language. *Id*. Plaintiffs filed this lawsuit against Defendants on March 27, 2018 to combat Defendants' illegal activities.

On April 11, 2018, this Court entered a Temporary Restraining Order[4] ("TRO") that, among other things, enjoined Defendants from selling Counterfeit Products, allowed expedited discovery and directed Plaintiffs to electronically complete service of process on Defendants pursuant to Fed. R. Civ. P. 4(f)(3). [30]. Specifically, the Court ordered Plaintiffs to serve Defendants by electronically publishing a link to the Amended Complaint and other relevant documents on a website and by sending an email to the email address provided for Defendants that includes a link to said website. [30] at ¶ 8. Electronic publication and email have proved to be reliable mechanisms for quickly providing notice to Internet store operators in similar cases. Gaudio Declaration at ¶ 6. Indeed, thousands of defendants in cases overseen by Plaintiffs' counsel have confirmed receipt of actual notice via email. *Id*.

Pursuant to this Court's Order [30], Plaintiffs served the TRO on AliExpress to obtain the email addresses provided and used by Defendants to register their AliExpress accounts (the "Service Email Addresses"). Gaudio Declaration at ¶ 7. AliExpress provided no names or physical addresses for Defendants. *Id*. Plaintiffs served Defendants at the Service Email Addresses on May 16, 2018. [44], Gaudio Declaration at ¶ 8. Plaintiffs have further provided notice of the TRO and their Motion for Entry of the Preliminary Injunction to Defendants at the Service Email Addresses. *Id*. at ¶ 9. On information and belief, Defendants also received notice of this case from AliExpress. *Id*. at ¶ 10.

Defendants have responded on eight separate occasions via email to the notices sent by Plaintiffs regarding this case using the Service Email Addresses. *Id*. at ¶ 11. Plaintiffs have

---

[4] The TRO was subsequently converted to a Preliminary Injunction on May 9, 2018. [43].

responded to each of these emails.  *Id.* at ¶ 12.  In total, Defendants received notice of this case via

email on at least eleven separate occasions.  *Id.* at ¶¶ 8-12.  Many of the Defendants also contacted

Plaintiffs through U.S. counsel, and settlement discussions were ongoing before Defendants joined

together and obtained their current counsel.[5]  Defendants then requested extensions totaling over

seventy days ([60], [96]), refused to discuss settlement with Plaintiffs, and filed this Motion.

## ARGUMENT

Rule 4(f) of the Federal Rules of Civil Procedure governs international service of process

on foreign individuals.  Service under Fed. R. Civ. P. 4(f)(3) "must be (1) directed by the court;

and (2) not prohibited by international agreement. No other limitations are evident from the text."

*FTC v. Repair All PC, LLC*, 2017 U.S. Dist. LEXIS 83173, at *8 (N.D. Ohio May 31, 2017).  Rule

4(f)(3) empowers the Court with flexibility and discretion to fit the manner of service utilized to

the facts and circumstances of the particular case.  *Id.*

Rule 4 does not require that a party attempt service of process by other methods enumerated

in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3), and the Hague

Convention does not displace Rule 4(f)(3).  *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882

F.3d 494, 498 (5th Cir. 2018) (defendant's argument "misses the mark because service was not

effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).");

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-1015 (9th Cir. 2002).  As the *Rio

Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service

of process.  *Rio Props., Inc.*, 284 F.3d at 1014.  To the contrary, the plain language of the Rule

---

[5] The circumstances leading up to Defendants' Motion are unusual. Shortly after Defendants received email notice of this Case pursuant to the Court's 4(f)(3) order, Plaintiffs were contacted by three separate attorneys representing one or more Defendants.  Gaudio Declaration at ¶ 13.  Several of Defendants' account balances are minimal, including one account with a balance of $0.00.  *Id.*  Settlement agreements were exchanged with counsel for several Defendants, but never returned.  *Id.*

requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* The task of determining whether a given case requires alternate service of process "is placed squarely within the sound discretion of the district court." *FTC v. Repair All PC, LLC,* 2017 U.S. Dist. LEXIS 83173, at *9.

Moreover, the Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props., Inc.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.* Courts across the United States, including every full-time Judge in the District Court of the Northern District of Illinois, have held that service by e-mail and electronic publication on China-based defendants pursuant to Rule 4(f)(3) is appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (S.D.N.Y. 2015); s*ee also,* Exhibit 8 to Gaudio Declaration (collecting cases in this District and other Districts).

## I. The Hague Convention Does Not Apply Because Defendants' Addresses Were Unknown.

The United States and China are signatories to the Hague Service Convention. Gaudio Declaration at ¶ 15. However, Article 1 of the Hague Convention states that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." *Id*. Defendants' Internet stores only provided store names. *Id*. at ¶ 2. No physical address was

provided on the Internet stores,[6] and they did not identify the owner of the Internet stores. *Id.* Since Defendants' names and addresses were not known, the Hague Convention did not apply, and the Court-directed service was proper under Fed. R. Civ. P. 4(f)(3). *See MCM Holding AG, et al. v. Dequn Zhao, et al.*, No. 18-cv-1677 (N.D. Ill. Aug. 14, 2018) (Docket Entry 42) (electronic service proper on China-based defendant under Fed. R. Civ. P. 4(f)(3) because defendant's address was unknown); *Levi Strauss & Co. v. Zhejiang Weidu Garment Co., Ltd., et al.*, No. 16-cv-07824 (N.D. Ill. Sept. 28, 2016) (Docket Entry 52) (same); *Chanel, Inc. v. Zhixian*, 2010 U.S. Dist. LEXIS 50745, at *7 (S.D. Fla. Apr. 29, 2010) (same).

## II.   Attempting Service Through the Hague Convention Is Not Mandatory.

Even if Defendants' addresses were known, which they were not, the Hauge Convention does not displace Fed. R. 4(f)(3). *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d at 498. Rule 4(f) does not require that a party attempt service of process through the Hague Convention as prescribed in Rule 4(f)(1) before petitioning the Court for alternative relief under Rule 4(f)(3). *Rio Props,* 284 F.3d at 1014. According to its plain language, Fed. R. Civ. P. 4(f)(3) requires that service must be (1) directed by the Court, and (2) not prohibited by international agreement. *Id.* No other limitations are evident from the text. *Id.* Rule 4(f)(3) "is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means." *Id*. at 1015. Service under Fed. R. Civ. P. 4(f)(3) is "neither

---

[6] Several Defendants provided unverified physical addresses only *after* they were given notice pursuant to Fed. R. Civ. P. 4(f)(3). Gaudio Declaration at ¶ 11. However, but for the Court's Order authorizing service per Fed. R. Civ. P. 4(f)(3), Defendants would not have received prompt notice of this case.

a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Id*. (citations omitted).

Since "[the Supreme Court] has not provided clear guidance as to how the requirements of the Hague Convention interact with a court's authority to order alternative service under Rule 4(f)(3)," many courts "have reasoned that alternative service may be ordered pursuant to Rule 4(f)(3) as long as the alternative method of service is not expressly prohibited by the Convention or objected to by the receiving state." *Richmond Techs., Inc. v. Aumtech Bus. Solutions*, 2011 U.S. Dist. LEXIS 71269, at *40 (N.D. Cal. July 1, 2011). Numerous courts have authorized alternative service pursuant to Fed. R. Civ. P. 4(f)(3) even when the defendant resides in a country that is a signatory to the Hague Convention, including for China-based defendants. *See id. at *40-41; Nagravision SA*, 882 F.3d at 498 (authorizing email service on China-based defendant pursuant to Fed. R. Civ. P. 4(f)(3)); *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (same); *In re LDK Solar Securities Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299, at *5-7 (N.D. Cal. Apr. 17, 2007) (same).

Defendants fail to mention or address any of the numerous supporting cases cited in Plaintiffs 4(f)(3) Memorandum [22]. Likewise, all of the cases cited by Defendants pertain to service by postal mail, and none even mention Fed. R. Civ. P. 4(f)(3) or electronic service. For example, in *Water Splash Inc. v. Menon*, the Supreme Court only discussed a prohibition on service by *postal mail*, but otherwise does not discuss a court's authority under Fed. R. Civ. P. 4(f)(3) or electronic service. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017). Likewise, *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.*, a California state court case cited by Defendants, only discusses whether service by postal mail

8

violates the Hague Convention.  233 Cal. Reptr. 3d 814, 825 (Ct. App. Cal. 2018).  Since *Rockefeller* is a state court case, it also does not discuss a court's authority under Fed. R. Civ. P. 4(f)(3), or even any Federal Rule of Civil Procedure.  *Caterpillar Inc. v. Brighton Indus.* discusses service on a Hong Kong company by international registered mail, and ultimately concludes that Article 10(a) of the Hague Convention allows service by registered mail on a defendant in a foreign country.  2013 U.S. Dist. LEXIS 190013, at *11 (C.D. Ill. 2013).  In *Brockmeyer v. May*, the Ninth Circuit noted that courts had authorized a variety of alternative methods of service abroad, including email, but that Fed. R. Civ. P. 4(f)(3) required prior court approval, which the plaintiffs in that case did not obtain.  383 F.3d 798, 805-06 (9th Cir. 2004).  Finally, Defendants rely on dicta from *Volkswagenwerk Aktiengesellschaft v. Schlunk* that "compliance with the [Hague] Convention is mandatory in all cases to which it applies."  *Volkswagenwerk Aktiengesellschaft*, 486 U.S. 694, 698-708 (1988).  However, *Volkswagenwerk* was decided in 1988, before the inclusion of subsection of Fed. R. Civ. P. 4(f)(3) in 1993.  As such, *Volkswagenwerk* does not mention or address Fed. R. Civ. P. 4(f)(3) or service by email.

### III. Email Service Is Not Prohibited by The Hague Convention, and China Has Not Objected to Service of Process by Email.

Courts have also agreed that service by email is not prohibited by the Hague Convention, including for China-based defendants.  *Maclean-Fogg Co. v. Ningbo Fastlink Equip. Co.*, 2008 U.S. Dist. LEXIS 97241, at *5 (N.D. Ill. Dec. 1, 2008) (holding that "[t]he Hague Convention does not prohibit service by e-mail or facsimile"); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. at 331-32 (granting motion to serve Chinese defendant by email); *Nanya Tech. Corp. v. Fujitsu, Ltd.*, 2007 U.S. Dist. LEXIS 5754, at *7 (D. Guam Jan. 25, 2007).  Further, limiting alternative service methods to only those explicitly authorized by China would necessarily render Fed. R. Civ. P. 4(f)(3) superfluous and redundant of Fed. R. Civ. P. 4(f)(1).

China has not objected to service by email and electronic publication. To the contrary, China explicitly authorizes service by email in certain situations and even public announcement "if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law." *See Chanel, Inc.*, 2010 U.S. Dist. LEXIS 50745, at *7; Gaudio Declaration at ¶ 17. China also explicitly authorizes "[s]ervice by facsimile, e-mail and any other means through which the receipt of the document may be acknowledged" on Defendants located outside of China. *Id*. Reciprocity dictates that if U.S. residents can be served via email by a Chinese court, the reverse is also true.

While China has objected to service by postal mail, Courts have declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email. *Sulzer Mixpac AG*, 312 F.R.D. at 331-32 (collecting cases holding that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10). "China's objection to service by postal mail does not cover service by email, and these forms of communications differ in relevant respects. Email communications may be more reliable than long-distance postal communications, and the arrival of an email at its destination address may be more readily tracked." *Id*. at 332. Further, while there may be strict and formal procedures for effectuating service in China, these are of little consequence to this Court's determination. *Nanya Tech. Corp*., 2007 U.S. Dist. LEXIS 5724, at *14 (holding that Court should not consider the receiving country's laws of service when evaluating whether service pursuant to Fed. R. Civ. P. 4(f)(3) was proper). Accordingly, service of process by electronic publication and email is appropriate under Fed. R. Civ. P. 4(f)(3) since it is not prohibited by the Hague Convention, and

because China has not objected to service of process by electronic publication and email. Defendants have provided no authority to the contrary.

### IV. Service via Email and Electronic Publication Comports with Constitutional Notions of Due Process.

This Court also correctly found that service via email and electronic publication comported with constitutional notions of due process, because it was reasonably calculated, under all of the circumstances, to apprise Defendants of the pendency of this action and afford it an opportunity to present objections. *See Maclean-Fogg Co.*, 2008 U.S. Dist. LEXIS 97241, at *5. This was further confirmed by Defendants' actual receipt of notice via email. On May 16, 2018, pursuant to this Court's Order, Plaintiffs served Defendants via the Service Email Addresses. [44]; Gaudio Declaration at ¶ 8. Plaintiffs have further provided notice of the TRO and its Motion for Entry of the Preliminary Injunction to Defendants at the Service Email Addresses. *Id*. at ¶ 9. Service by electronic publication and email was also particularly necessary in this Case since Plaintiffs sought expedited injunctive relief.

Notwithstanding Defendants' actual notice via email, Courts have also held that communications to email addresses listed on a defendant's website comport with due process: "[w]hile email communications may also go astray or fail to come to the relevant individuals' attention, the Court finds that in this case, service to the email address listed on defendant's website is 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Sulzer Mixpac AG*, 312 F.R.D. at 332. Defendant's Motion should be denied.

**V.     Alternatively, If This Court Finds That Its Previous Order Authorizing Electronic Service Pursuant to Fed. Civ. 4(f)(3) Was Insufficient, This Case Should Be Retained on Docket Pending Effective Service.**

Defendants have asked for this case to be dismissed.  [102] at p. 15.  However, if Defendant's Fed. R. Civ. P. 12(b)(5) motion is granted, this Court should quash the service and retain the action.  *See Bacino v. American Federation of Musicians*, 407 F. Supp. 548, 555 n.9 (N.D. Ill. 1976); *Paget v. Principal Fin. Group*, 2013 U.S. Dist. LEXIS 114645, at *9 (S.D. Ind. Aug. 14, 2013).  Dismissal of this case would thwart the purpose of the Federal Rules to secure the just, speedy, and inexpensive determination of this case.  *Paget v. Principal Fin. Group*, 2013 U.S. Dist. LEXIS 114645, at *9.  This is especially true since Defendants actually received notice of this case, and service in accordance with the Hague Convention would likely take at least one year to be effectuated.  *See* Gaudio Declaration at ¶ 16.  Additionally, since this Case was filed on March 27, 2018 [1] (over six months ago) and Defendants would likely not be served yet if served under the Hague Convention, dismissal for insufficient service is also unwarranted.  The time limit for service per Fed. R. Civ. P. 4(m) does not apply to service in a foreign country under Rule 4(f).  As such, if this Court determines that service on Defendants was insufficient, Plaintiffs respectfully request this Court to compel Defendants to provide verified names and addresses, and to stay this Case for twelve months while Plaintiffs attempt service through the Hague Convention.

<u>**CONCLUSION**</u>

For the reasons states above, electronic service on the unknown Defendants pursuant to Fed. R. Civ. P. 4(f)(3) was proper and provided Defendants with prompt notice of this Lawsuit.  Accordingly, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss [102].

Dated this 24th day of October 2018.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A and Oakley, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of October, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system.  The CM/ECF system will sent a "Notice of E-Filing" to all attorneys of record in this case.

<u>/s/ Justin R. Gaudio</u>
Amy C. Ziegler
Justin R. Gaudio
Jessica L. Bloodgood
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jbloodgood@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A. and Oakley, Inc.*