IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> XIONG HUA PING, et al., <br><br> Defendants. | Case No. 18-cv-02188 <br><br> **Judge Joan B. Gottschall** <br><br> **Magistrate Judge Sidney I. Schenkier** |

## DECLARATION OF JUSTIN R. GAUDIO

I, Justin R. Gaudio, of the City of Chicago, in the State of Illinois, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. ("Plaintiffs"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. **Exhibit 1** attached hereto are true and correct copies of screenshots of Defendants belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store Internet Stores.

3. According to a report released by the U.S. Chamber of Commerce Global Intellectual Property Center (GIPC) titled *Measuring the Magnitude of Global Counterfeiting*, at least 86 percent of all global counterfeit products originate in China and Hong Kong markets. A true and correct copy of an article released by GIPC summarizing the report is attached hereto as **Exhibit 2**.

4. According to the U.S. Customs and Border Protection Agency's Intellectual Property Rights Seizure Statistics, U.S. government seizures of counterfeit goods totaled more than $1.2 billion based on the manufacturer's suggested retail price (MSRP) for the 2017 fiscal year. China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for a total estimated MSRP of more than $940 million, or 78 percent of the estimated MSRP value of all seizures. A true and correct copy of this report is attached hereto as **Exhibit 3**.

5. Plaintiffs have filed over one hundred such lawsuits disabling over 120,000 China-based Internet stores since 2012. Since 2012, over 500 such cases have been filed in this District. Hundreds of similar cases have been filed in other districts, as well.

6. In my experience in combatting online counterfeiting over the last ten years, electronic publication and email have proved to be reliable mechanisms for quickly providing notice to Internet store operators in similar cases. Indeed, thousands of defendants in cases I have overseen have confirmed receipt of actual notice via email.

7. Plaintiffs served the Temporary Restraining Order ("TRO") on AliExpress to obtain the email addresses provided and used by Defendants to register their AliExpress accounts (the "Service Email Addresses"). AliExpress provided no names or physical addresses for Defendants.

8. Plaintiffs served Defendants at the Service Email Addresses on May 16, 2018. Attached hereto as **Exhibit 4** is a true and correct copy of Plaintiffs' May 16, 2018 email.

9. Plaintiffs have further provided notice of the TRO and their Motion for Entry of a Preliminary Injunction to Defendants at the Service Email Addresses. Attached hereto as **Exhibit 5** are true and correct copies of these emails.

10. On information and belief, Defendants also received notice of this case from AliExpress.

11. Defendants have responded on eight separate occasions via email to the notices sent by Plaintiffs regarding this case using the Service Email Addresses. Attached hereto as **Exhibit 6** are true and correct copies of Defendants' emails.

12. Plaintiffs have responded to Defendants' emails. Attached hereto as **Exhibit 7** are true and correct copies of Plaintiffs' responses to Defendants' emails.

13. Plaintiffs were contacted by three separate attorneys representing one or more of the Defendants. Several of Defendants' account balances are minimal, including one account with a balance of $0.00. Settlement agreements were exchanged with counsel for several Defendants, but never returned.

14. **Exhibit 8** attached hereto is a list of cases in this District holding that alternative forms of service pursuant to Fed. R. Civ. P. 4(f)(3) are appropriate in factually similar cases, as well as cases from other Districts.

15. I have reviewed the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), to which the United States and China are signatories. The Hague Convention does not preclude service by e-mail, and the declarations to the Hague Convention filed by China do not appear to expressly prohibit e-mail service. Additionally, according to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." A true and correct copy of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, and a list of signatory members, are collectively attached hereto as **Exhibit 9**.

16. Attached hereto as **Exhibit 10** is a true and correct copy of an affidavit filed by Celeste Ingalls, a specialist in the service of civil process in foreign countries, in *Koninklijke KPN N.V. v. Oneplus Technology (Shenzhen) Co., Ltd.*, Civil No. 17-cv-89 (D. Delaware Jan. 30, 2017) (Docket Entry No. 16-1). In paragraph 11 of her affidavit, she notes that "we recently received notification from the Ministry of Justice in Beijing that the standard turnaround time for service will now be between 1 and 2 years and proofs of service are starting to be returned for requests in various cases that were originally sent to China 2 years ago."

17. I have researched whether the issuance of an order to serve process upon the Defendants by electronic mail pursuant to Fed. R. Civ. P. 4(f)(3) is contrary to or likely to offend the law of the People's Republic of China (the "PRC"). I located an English language version of the Civil Procedure Law of the People's Republic of China (Revised in 2017). A true and correct copy is attached hereto as **Exhibit 11**. Chapter VII, Section 2, of the Civil Procedure Law governs service of process. I am informed and believe that the law does not preclude the service of process by e-mail and allows for alternate service of process in certain circumstances. For example, Article 92 of the law provides that, if the whereabouts of a recipient of the service is unknown, or if a document cannot be served by the other methods reflected in the law, a document shall be served by public announcement, a method even less likely to reach a defendant than service by e-mail. Additionally, Articles 87 and 267(7) provide that a document may be served by way of facsimile or electronic mail in certain circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 24th day of October 2018 at Chicago, Illinois.

/s/ Justin R. Gaudio
Justin R. Gaudio
Counsel for Plaintiffs