IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and Oakley, Inc., | )<br>)<br>) Case No. 18 CV 2188 |
| Plaintiffs, | )<br>) Judge Joan B. Gottschall |
| v. | )<br>) |
| The Partnerships and Unincorporated Associations Identified on Schedule "A," | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs own several trademarks related to Ray-Ban- and Oakley-branded sunglasses, clothing, and accessories. Am. Compl. ¶¶ 12, 20, ECF No. 12. They brought this suit under the Lanham Act, 15 U.S.C. § 1051 *et seq.,* and the Illinois Uniform Deceptive Practices Act, 815 ILCS § 510 *et seq.,* against the owners of domains and the operators of online marketplaces hosted by companies such as eBay and Alibaba for allegedly offering and selling counterfeits of their goods. *See id.* ¶¶ 28–38. In their amended complaint, plaintiffs name 906 defendants, *id.* ¶¶ 1–24, described as "individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions." *Id.* ¶ 28. Six defendants, referred to here for simplicity as "defendants," move to dismiss the amended complaint, arguing that plaintiffs did not comply with the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Service Convention"), 20 U.S.T. 361, when they served the summons and complaint by email. For the following reasons, the motion is granted.[1]

---

[1] Defendants also argue that the amended complaint inadequately pleads an element of plaintiffs' Lanham Act claims. At a hearing held October 3, 2018, plaintiffs sought leave to file an amended complaint in lieu of responding to defendants' Lanham

1

# I. BACKGROUND

Over the last five years, this court has presided over several similar cases brought against China-based operators of domains and online marketplaces allegedly selling counterfeit goods. In every case but this one, no defendant appeared, and default judgment was eventually entered. As is typical, this litigation began with the filing of a motion to seal and a sealed complaint identifying the defendants by domain name or online marketplace name. ECF Nos. 1, 7; *see also* Sched. A to Compl., ECF No. 9 (listing defendants). In this case, plaintiffs amended their complaint the next day. ECF No. 12. They also filed a motion for a temporary restraining order ("TRO"), ECF No. 13, and a separate motion under Federal Rule of Civil Procedure 4(f)(3) for authorization to serve the defendants with the complaint and summons by electronic means, ECF No. 21. The court granted both motions ex parte and entered a sealed TRO, ECF No. 30. Among other things, the TRO stated:

> Plaintiffs may provide notice of these proceedings to Defendants, including notice of the preliminary injunction hearing and service of process pursuant to Fed. R. Civ. P. 4(f)(3), by electronically publishing a link to the Amended Complaint, this Order and other relevant documents on a website to which the Defendant Domain Names which are transferred to Plaintiffs' control will redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 5 and 6 to the Declaration of John Stewart and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The Clerk of the Court is directed to issue a single original summons in the name of "Xiong Hua Ping and all other Defendants identified in the Amended Complaint" that shall apply to all Defendants. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

TRO ¶ 8.

---

Act arguments. Defendants opposed the oral motion for leave to amend. After hearing argument, the court directed the parties to brief the service of process issue. Defendants have preserved their Lanham Act arguments.

AliExpress, the company that hosted defendants' online stores, provided email addresses associated with defendants' accounts but no names or street addresses. Decl. of J. Gaudio ¶ 7, Oct. 24, 2018, ECF No. 114. Plaintiffs sent the complaint, summons, and notice of the TRO to the email addresses. *Id.* ¶¶ 7–9 (citing *id.* Ex. 4, 5, ECF Nos. 114-4, 114-5). Plaintiffs received reply emails from eight defendants (some of which number among the group of defendants moving to dismiss), and three different attorneys representing one or more defendants also contacted plaintiffs' counsel, often to insist on service of the summons and complaint in accordance with the Hague Service Convention. *See* Decl. of J. Gaudio ¶¶ 11, 13; Correspondence at 2, ECF No. 114-6 Ex. 6.

On plaintiffs' motion, the court extended the TRO for 14 days, ECF No. 37, and, after a hearing at which no defendant appeared (and plaintiffs' counsel represented that he knew of no opposition, ECF No. 42), entered a preliminary injunction carrying forward many of the TRO's provisions. Prelim. Injunction, ECF No. 43. Counsel for the moving defendants appeared approximately five weeks after the entry of the preliminary injunction. *See* Notices of Appearance, ECF Nos. 53–58 (June 20, 2018). Defendants obtained extensions of the deadline to respond to the complaint and filed the pending motion to dismiss in September 2018. ECF No. 102.

## II. LEGAL STANDARD

Every defendant must be served with a copy of the complaint and summons in accordance with Rule 4. Fed. R. Civ. P. 4(b), 4(c)(1). Only proper service vests a district court with personal jurisdiction over a defendant. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). Thus, "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over a defendant in the absence of valid service of process." *Mid-Continent*

*Wood Prods., Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991). For this reason, plaintiffs' evidence that some defendants responded to their email messages regarding this lawsuit does not prove that this court has personal jurisdiction over any defendant.

Plaintiffs bear the burden to show proper service. Defendants rely on Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). Rule 12(b)(4) motions challenge the form of the process; they test matters such as whether the summons bore the seal of the court, was signed, or was addressed to the proper party. *See, e.g., O'Brien v. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1399–1400 (7th Cir. 1993). Rule 12(b)(5) motions, in contrast, challenge the sufficiency of the manner in which the process was served. Because motions under both rules ultimately test the court's personal jurisdiction over the defendant, the same standards govern motions under both rules. *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 881 n.5 (N.D. Ill. 2011). Under those standards, the plaintiff has the burden to prove that the defendant was properly served such that the court obtained personal jurisdiction. *Cardenas*, 646 F.3d at 1005 (citing *Homer v. Jones–Bey*, 415 F.3d 748, 754 (7th Cir. 2005)).

### III. DISCUSSION

With an exception not applicable here, Federal Rule of Civil Procedure 4(f) governs service of a corporation not at a place within the United States. Fed. R. Civ. P. 4(h)(2). Rule 4(f) authorizes two methods of service at issue here. First, service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1). Second, Rule 4(f)(3) authorizes service "by other means not prohibited by international agreement, as the court orders." Defendants argue that the TRO did not comply with Rule 4(f)(3) because the Hague Service Convention prohibits email service.

Intended to simplify and standardize serving process abroad, the Hague Service Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Men*on, 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). The "primary innovation" of the Convention is the requirement that each member nation designate a central authority to receive service of process. *Schlunk*, 486 U.S. at 698. The Convention authorizes service by certain other means, but it does not speak directly to service by email and other electronic means. *See Water Splash,* 137 S. Ct. at 1508 (discussing means of service authorized by the Convention). Federal trial courts have divided over whether the Convention limits their authority to authorize service of process by email.[2] Before reaching that question, however, the court must be sure that the Hague Service Convention applies, a matter plaintiffs contest. *Schlunk*, 486 U.S. at 698.

### A. Plaintiffs Did Not Exercise Reasonable Diligence To Determine Defendants' Mailing Addresses.

The court looks to Article 1 to determine whether the Hague Service Convention applies. Article 1 specifies the Hague Service Convention's scope. *Id.* at 699. The first sentence says that the "Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." *Id.* (quoting Article 1 of the Hague Service Convention, 20 U.S.T. at 362). Plaintiffs argue that the second sentence's exception applies. The Hague Service Convention does not apply "where the address of the person to be served with the document is not known." Art. 1, 20 U.S.T. at 362. Obviously, a court cannot determine whether a plaintiff has complied with the Convention if the

---

[2] *See generally* Michael A. Rosenhouse, Annotation, *Permissibility of Effectuating Service of Process by Email Between Parties to Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, 14 A.L.R. Fed. 3d Art. 8 (West 2019).

5

defendant's address is unknown because the court has no way to decide, for instance, which member state's internal law is implicated by certain provisions of the convention. Defendants argue that plaintiffs did not investigate their mailing addresses with the diligence the Hague Service Convention requires. Reply 3, ECF No. 117. They cite no authority supporting their argument. *See id.*

Nevertheless, courts have interpreted the second sentence of Article 1 consistently. A plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address. *See, e.g., Advanced Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *4–5 (S.D.N.Y. Sept. 30, 2018); *Progressive Se. Ins. Co. v. J & P Transp.*, 2011 WL 2672565, at *3 (N.D. Ind. July 8, 2011) (citing *Opella v. Rullan*, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011)); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (collecting and discussing cases).

When it issued the TRO, the court had no reason to think that defendants' addresses could be determined with reasonable diligence. Plaintiffs had submitted screenshots of defendants' websites. The screenshots showed that plaintiffs purchased counterfeit products from the defendants' online stores and had them shipped to Illinois addresses. *See, e.g.,* ECF No 17-1. The parties have not directed the court to a screenshot listing a contact email or physical address for the defendants. *See id.* Also, a declaration accompanying plaintiffs' motion for leave to serve electronically averred that the defendants who operated Internet domains ignored governing rules and "provided incomplete and/or false physical address information to the domain name registrars." Decl. of J. Gaudio ¶ 3, Mar. 28, 2018, ECF No. 23. Plaintiffs' attorney made no similar averments about defendants who used online marketplaces. *See id.*; *see*

6

*also* Mem. Supp. Mot. Alt. Service 2–4, ECF No. 22 (arguing that defendants operating domain names list inaccurate mailing addresses). Plaintiffs argued that "it is far more likely that Defendants can be served electronically than through traditional service of process methods" because online companies using online marketplaces must provide a valid email address to accept payment. Mem. Supp. Mot. Alt. Service 4.

Evidence submitted by defendants in support of their motion to dismiss shows that plaintiffs neglected to mention an important source of information.[3] The packing slips for the allegedly counterfeit products plaintiffs purchased bear return addresses in China. *See* ECF No. 117-1 at 2–14. Defendants also provide screenshots purportedly showing that they had addresses on file with AliExpress, which is not a domain registrar but a host for online marketplaces. *See id*. Although they contain recognizable mailing addresses, defendants' screenshots appear to be written in the Chinese language. Defendants have provided no English translations, however. "Documents in a foreign language are widely considered not properly authenticated." *MDG Int'l., Inc. v. Australian Gold, Inc.*, 606 F. Supp. 2d 926, 939 n.26 (S.D. Ind. 2009) (citing *Lopez–Carrasquillo v. Rubianes*, 230 F.3d 409, 413–14 (1st Cir. 2000)) (other citations omitted). The court therefore disregards the screenshots.

Plaintiffs do not dispute that the packing slips for the products they ordered included return addresses in China.[4] ECF No. 120 at 2. Instead, plaintiffs argue that "[o]ftentimes, such return addresses are illegitimate or the address of a drop-shipping facility that handles shipment of products for various online merchants." *Id.* But plaintiffs point to no evidence substantiating

---

[3] Particularly because plaintiffs in these types of cases often proceed ex parte, it is hoped that counsel will bring to the court's attention in future cases any mailing addresses of which they are aware, even if the address is believed to be invalid. Similarly, the court should be informed if counsel reasonably believes that mailing addresses may be available from online marketplaces.
[4] Defendants attached evidence of the packing slips to their reply. The court nevertheless considers this evidence because plaintiffs sought and obtained leave to file a surreply.

7

their contentions or showing their applicability here. *See id.* They instead attempt to shift the burden of proving proper service to defendants, faulting them for not representing explicitly that the return addresses are valid for service of process. *See id.*

A generalized suspicion about an address's validity does not make it "unknown" under the Hague Service Convention. Plaintiffs remind the court that recent statistics released by U.S. Customs and Border Protection show that goods exported by China and Hong Kong represent the lion's share of counterfeit imported goods seized in 2017. *See* Report 13, ECF No. 114-3. But the fact that defendants allegedly offer counterfeit goods for sale does not automatically mean that every address listed for them is invalid or that they are evading service of process. More specific proof is needed. Once a plaintiff learns of a defendant's purported mailing address, courts require specific proof of a "reasonable investigation" of the address's validity before finding that it is "unknown" under Article 1. *Advanced Access*, 2018 WL 4757939, at *5 (citations omitted); *see also Shenzhen Ruobilin Network Tech., Ltd. v. SJG-Lesn*, 2016 WL 6988868, at *1 (W.D. Wis. Nov. 29, 2016); *Blumedia Inc. v. Sordid Ones BV*, 2011 WL 42296, at *2 (D. Colo. Jan. 6, 2011); *Katz*, 287 F.R.D at 395–96; *Progressive Se. Ins. Co.*, 2011 WL 2672565, at *2–3. By way of contrast, a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether physical addresses associated with domain names were valid and found them to be not so. *Chanel, Inc. v. Song Xu*, 2010 WL 396357, at *1, *3 (W.D. Tenn. Jan. 27, 2010); *see also BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005).

The plaintiffs here point to no evidence that they specifically investigated the validity of the return addresses for the products they ordered from defendants' stores. They have therefore

failed to carry their burden to show that defendants' addresses were unknown. Consequently, the Hague Service Convention applies.

### B. Plaintiffs Have Not Shown that China's Official Action Makes the Hague Service Convention Inapplicable.

Plaintiffs next argue that the Hague Service Convention does not apply due to the length of time it takes China's central authority to deliver process. The court in *In re Potash Antitrust Litigation*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009), authorized service of a Russian defendant by fax and email. The *Potash* court recognized that it had an "exceptional circumstance" before it. *Id.* The plaintiff presented evidence that at the time Russia had "unilaterally suspended all judicial cooperation with the United States in civil proceedings and all service requests [were] returned unexecuted." *Id.* at 929. The court pointed to the following language in the 1993 Advisory Committee's note to Rule 4(f)(1). Court-directed service pursuant to Rule 4(f)(3) is particularly appropriate where a signatory to the Hague Convention has "refused to cooperate for substantive reasons." *Id.* at 930.

The plaintiffs here have not attempted to show that China has refused to cooperate with the Hague Service Convention for substantive reasons. They submit an affidavit filed in a case in Delaware averring that China's central authority takes one to two years to serve process. Decl. of C. Ingalls ¶ 11, ECF No. 114-10. The declaration expresses frustration with the delays but does not explain why they occur. *See id.* Accordingly, the declaration does not permit a finding that China's official action not to cooperate with the Convention causes the delays. Furthermore, Article 15 of the Convention provides remedies when a nation's central authority takes more than six months to serve process. Plaintiffs do not explain why this remedy is insufficient.

### C. Plaintiffs Have Not Shown That Service By Email In China Is Consistent With The Hague Service Convention.

Again, the authority to order alternative service exercised in the TRO comes from Rule 4(f)(3). The rule permits service "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). To decide whether ¶ 9 of the TRO was proper, the court must therefore ask whether the Hague Service Convention prohibits service by email or posting on a web page.

Plaintiffs appear to treat answering this question as a search of the Convention's text for prohibitory language. They point to their attorney's averments that he has reviewed the Convention and concluded that it does not preclude service by email. Decl. of J. Gaudio ¶ 15, Oct. 24, 2018, ECF No. 114. The attorney does not explain further. *See id*. In the absence of citation to other authority, he appears to mean that the Convention's text does not explicitly prohibit email service. Plaintiffs are correct as a textual matter. The Convention's text does not speak in specific terms of service by email, fax, or other means of delivery unknown in the 1960's. *See Water Splash*, 137 S. Ct. at 1508. The question is whether the Convention's textual silence on a method of service leaves this court free to authorize service by that method.

The Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text. The Court took a broad view of the Convention in 1988, holding that it "pre-empts inconsistent methods of service . . . [wherever] it applies." *Schlunk*, *supra*, 486 U.S. at 699. The court reaffirmed that holding, quoting this language verbatim, in 2017. *Water Splash*, *supra*, 137 S. Ct. at 1507. Indeed, Article 19 "clarifies" the scope of this preemption by providing that the Convention does not preempt signatories' internal laws permitting service by methods the Convention does not allow. *Id*. at 1508. The Court discussed one such non-enumerated method in *Schlunk* where it explained that

the drafting history of the Convention demonstrated that the delegates wished to prohibit a method of service then allowed in some civil law countries called notification au parquet. *See Schlunk*, 486 U.S. at 703; *see also id.* at 709–10 & n.1 (Brennan, J.) (concurring in the judgment). Concluding that "[t]here is no question but that the Conference wanted to eliminate notification au parquet," the court pointed to Articles 15 and 16, which do not mention that or any other method of service. *See id.* at 703. As this example shows, the absence of express language prohibiting service by email or any other unlisted means in the Hague Service Convention is not dispositive. The inquiry must be whether email is inconsistent with the service methods the Convention allows.[5]

The Seventh Circuit has not spoken on this question. This court has located one case in this district holding that email service is consistent with the Hague Service Convention, but the conclusion is stated without any further analysis. *See MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, 2008 WL 5100414, at *2 (N.D. Ill. Dec. 1, 2008) (citing *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 1140639, at *2 (N.D. Cal. April 17, 2007)).[6] The court therefore declines to follow that case. Plaintiffs point to two articles of the Convention authorizing email service. The court examines each in turn.[7]

---

[5] Plaintiffs also cite *Rio Properties Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002), but that case does not address the Hague Service Convention issue here. In *Rio Properties*, the Ninth Circuit held that judicially authorized service by email satisfied due process requirements but concluded that the Hague Service Convention did not apply. Plaintiffs point to language in the Ninth Circuit decision opining that email may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018. That may well be so, but Article 15 of the Hague Service Convention itself provides a means of service for emergencies. Regardless of the Convention's contents, this court knows of no policy exception to the Constitution's Supremacy Clause, which gives the Hague Service Convention the force of federal law. *See Schlunk*, 486 U.S. at 699.

[6] As it turns out, the Hague Convention did not apply in the Northern District of California case the *MacLean-Fogg* court cited because the plaintiff "presented evidence that physical addresses for a number of the named defendants cannot be located or that defendants have refused to accept service." *Williams-Sonoma*, 2007 WL 1140639, at *2. The court therefore finds *MacLean-Fogg* unpersuasive.

[7] For a similar reason, the court finds unpersuasive a Fifth Circuit case not cited by the parties. In *Nagravision SA v. Gotech International Technology Limited*, 882 F.3d 494, 498 (5th Cir. 2018), the Fifth Circuit stated in a single sentence of analysis that "because service was not effected pursuant to the Hague Convention . . . that agreement does not displace Rule 4(f)(3)." *Id.* (quoting *United States v. Real Prop. Known As 200 Acres of Land Near FM 2686 Rio Grande City, Tex.*, 773 F.3d 654, 659 (5th Cir. 2014)). The opinion did not cite *Schlunk* or *Water Splash*, however. *See id.* Neither did the case on which it relied. *See*

11

*1. Article 19: China's Internal Law*

Plaintiffs argue that Chinese law allows them to serve process by email. Article 19 of the Hague Service Convention leaves intact "internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *Water Splash*, 137 S. Ct. at 1508. The parties submit conflicting evidence of the contents of Chinese law on authorized methods of serving process. Referring to Article 19, plaintiffs' lawyer avers that:

> I located an English language version of the Civil Procedure Law of the People's Republic of China (Revised in 2017) [. . . .] A true and correct copy is attached hereto as Exhibit 11. Chapter VII, Section 2, of the Civil Procedure Law governs service of process [. . . .] I am informed and believe that the law does not preclude the service of process by e-mail and allows for alternate service of process in certain circumstances.

Decl. of J. Gaudio ¶ 17, Oct. 24, 2018, ECF No. 114.

Plaintiffs' excerpts of the Code of Civil Procedure of the People's Republic of China do not include Article 277, s*ee* ECF No. 114-11. But if the text is accurate, the language of Article 277 is dispositive. It is quoted in *Rockefeller Technology Investments (Asia) VII v. Changzhou Sinotype Technology Co.*, 233 Cal. Rptr. 3d 814, 826 (Ct. App. 2018), cited by defendants. Plaintiffs do not contest the validity of Article 277, and the court's independent research has confirmed its text. *See* Fed. R. Civ. P. 44.1(a) & Advisory Committee's Note ("There is no requirement that the court give formal notice to the parties of its intention to engage in its own research on an issue of foreign law which has been raised by them . . . ). Plaintiffs have pointed to nothing showing that Chinese law creates an exception to Article 277 here. They have

---

*Real Prop.*, 773 F.3d at 659. Instead, an examination of that case reveals that the address of the party to be served was unknown, so the Hague Service Convention did not apply. *See id.* at 660 ("We agree that, given the extensive yet unsuccessful measures taken by the United States to locate Dr. Tirado, his address was unknown."). This court declines to follow *Nagravision* because it does not reconcile its holding with *Schlunk* or *Water Splash*.

therefore failed to carry their burden to show that Article 19 of the Hague Service Convention applies.

*2. Article 10(a): Objections to Service by "Postal Channels"*

Courts generally approach the problem of email service through the prism of Article 10(a). Article 10(a) says that "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad." 20 U.S.T. at 361. The cases disagree about how to interpret Article 10(a) objections. Typical of one line of authority is *Elobied v. Baylock*, 299 F.R.D. 105, 108 (E.D. Pa. 2014). Switzerland lodged an Article 10(a) objection "oppos[ing] the use in its territory of the methods of transmission provided for" in Article 10 (*viz.,* postal channels). *Id. Elobied* interpreted this objection as prohibiting service by postal and electronic mail. *Id.*

*Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015), exemplifies another approach. Many cases have "declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email." *Sulzer Mixpac*, 312 F.R.D. at 331 (collecting cases).

This court is persuaded by the cases treating Rule 10(a) objections as precluding service by email. Because email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent. *See Schlunk*, 486 U.S. at 698. Suppose, as several cases conclude, that Article 10(a) treats email as a type of postal channel. If Article 10(a) uses language broad enough to reach email, it is difficult to see why an objection using Article 10(a)'s

language should be given equal breadth. *See Elobied*, 299 F.R.D. at 108; *Mapping Your Future, Inc. v. Mapping Your Future Servs., Ltd.*, 266 F.R.D. 305, 308 (D.S.D. 2009).

China's Article 10 objection embraces all forms of service the Article allows. China "oppose[s] the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention."[8] China's objections are substantially in the form of objections which courts have determined prevent service by email. These include objections communicated by Switzerland, *see Elobied*, 299 F.R.D. at 108; Germany, *see Agha v. Jacobs*, 2008 WL 2051061, at *1–2 (N.D. Cal. May 13, 2008); and Mexico, *see Katz*, 287 F.R.D. at 396–97. China's objections likewise preclude email service. *See also Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 n.2 (S.D.N.Y. 2013) (dictum suggesting that email service is not permissible in China).

The remaining authority cited by plaintiffs does not persuade the court otherwise. Plaintiffs submit a chart listing three pages of TRO's and orders authorizing service issued ex parte by judges of this court, including this judge. ECF No. 114-8. These orders, plaintiffs claim, reflect a broad consensus that authorizing email service on a defendant located in China is compatible with the Hague Service Convention. The orders were issued at the early stage of litigation in similar counterfeiting cases. *See id.* There is no indication that plaintiffs' counsel brought to the court's attention the contrary legal authority discussed in this order or the fact that the plaintiff had access to return addresses for the defendants. For all of these reasons, the cases collected in plaintiffs' chart have little persuasive value. *See Greyhound Lines, Inc. v. City of Chicago*, 398 F.2d 36, 39 (7th Cir. 1968); *United States v. Bowman Dairy Co.*, 185 F.2d 159, 167 (7th Cir. 1950); *see also generally Ayestas v. Davis*, 138 S. Ct. 1080, 1091 (2018) ("In our

---

[8] Hague Convention on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=393&disp=resdn (last visited May 1, 2019).

adversary system, ex parte motions are disfavored, but they have their place.") (citations omitted).

## IV. CONCLUSION

The TRO gave plaintiffs sufficient reason to believe that the manner of service authorized was adequate, but, like many such orders in similar cases, it was obtained ex parte and under seal. Paragraph nine of the TRO does not withstand scrutiny under full adversary briefing. Defendants' motion to dismiss is therefore granted. The court will set a status hearing at which plaintiffs should be prepared to tell the court how, if at all, they intend to serve the defendants who have been dismissed.


Date:   May 24, 2019                                   /s/
                                                Joan B. Gottschall
                                                United States District Judge