IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and OAKLEY, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| XIONG HUA PING, et al., | ) ) |
| Defendants. | ) ) ) |

Case No. 18-cv-02188

**Judge Joan B. Gottschall**

**Magistrate Judge Sidney I. Schenkier**

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND ORDER [131] GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Luxottica Group S.p.A. and Oakley, Inc. ("Plaintiffs") respectfully move this Honorable Court to reconsider its Memorandum Opinion and Order [131] granting Defendants' belmon official store, donna official store, Shop513892 Store, story boutique store, who cutie glasses factory store, and woo shao's store ("Defendants") Omnibus Motion to Dismiss the Amended Complaint [102, 117] ("Motion to Dismiss").

**I.      Introduction and Background**

On March 28, 2018, Plaintiffs filed a motion requesting this Court's permission to effectuate service of process on unknown Defendant Internet store operators pursuant to Federal Rule of Civil Procedure 4(f)(3) via email and electronic publication. [21] ("4(f)(3) Motion"). On April 11, 2018, this Court granted Plaintiffs' 4(f)(3) Motion. [29], [30]. Plaintiffs served the TRO on AliExpress to obtain the email addresses Defendants provided to AliExpress and served Defendants via email and online publication. [44-1]. The Court granted Defendants' Motion to Dismiss alleging improper service and requested that Plaintiffs inform the Court how they intend

to serve Defendants at the June 5, 2019 status hearing. [131]. Reconsideration is requested for the reasons below.

The reasonable due diligence section of the Memorandum Opinion and Order [131] ("Order") appears to rely heavily on an unauthenticated Composite Exhibit A [117-1] attached to Defendants' Reply [117] that includes snippets of purported addresses for Defendants. Based on this Exhibit, the Order incorrectly assumes that information was available to Plaintiffs when their 4(f)(3) Motion was filed. This is not true - the correct facts are that: (1) Plaintiffs did not have access to Defendants' names and addresses purportedly on file with AliExpress; (2) Plaintiffs did not have the return shipping label addresses when their 4(f)(3) Motion was filed; and (3) the names on the return shipping labels do not match any named Defendants. Plaintiffs exercised reasonable diligence in the context of what information was available to them regarding Defendants, and in the broader context of trademark counterfeiting cases against China-based Internet store operators.

The Order also treats dicta in two Supreme Court cases as binding precedent even though neither case holds or even suggests that the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention") must be complied with before alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is ordered. Therefore, it is proper for the Court to consider the multitude of cases cited by Plaintiffs that found email service on China based defendants to be proper. This includes decisions in *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) and *Gianni Versace, S.P.A. v. Yong Peng, at al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019)[1], which both hold that the Hague Convention does not displace Fed. R. 4(f)(3) and that email service is proper on a China-based defendant. The

---

[1] *Gianni Versace, S.P.A. v. Yong Peng, at al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) was brought to the Court's attention in a Notice of Related Decision. [125]. Since *Versace* was decided after briefing had commenced, it is unclear whether the Court considered this decision.

2

Order [131] at p.11 n. 7 states that *Nagravision* was not cited by the parties, but Plaintiffs cited to this case on pages 5, 7, and 8 of their Response [113]. As such, email and electronic service on China-based defendants is proper.

As further explained below, Plaintiffs respectfully request that this Court reconsider its Order.

**II.     Plaintiffs Exercised Reasonable Diligence When Considered Under Correct Facts.**

    **A. Plaintiffs Did Not Have Access to Defendants' Names and Physical Addresses Purportedly on File with AliExpress.**

Plaintiffs do not know and cannot obtain the names and addresses Defendants have on file with AliExpress. Alibaba, Inc. ("Alibaba"), the company who owns the AliExpress marketplace platform, will only provide Plaintiffs with an email address for the Defendants. Alibaba will not provide Plaintiffs with the name or physical address of any AliExpress store owner, including Defendants.[2] Therefore, Plaintiffs did not have access to the screenshots purportedly showing that Defendants had addresses on file with AliExpress prior to seeing them attached to Defendants' Reply [117] as Composite Exhibit A [117-1]. Plaintiffs' Response [113] at p. 4 informed the Court that "AliExpress provided no names or physical addresses for Defendants."

While the Court properly disregarded the screenshots of Defendants' purported registration screens with AliExpress as not being properly authenticated because they are written in Chinese without translations ([131] at p. 7), it appears that the Court mistakenly believed that Plaintiffs had access to Defendants' Internet store registration information when Plaintiffs had already informed

---

[2] Alibaba's position is that they are not subject to United States court orders and that any information produced or action taken in response to a United States court order is on a "purely discretionary and without prejudice basis." Declaration of Justin R. Gaudio ("Gaudio Declaration") at ¶2. In telephone conversations with in-house counsel for Alibaba, Plaintiffs' counsel was informed that Alibaba will not produce the name or address of store owners because doing so may violate Chinese privacy laws. *Id*.

3

the Court that they did not ([113] at p. 4). The Order [131] stated in footnote 3 on page 7 that "the court should be informed if counsel reasonably believes that mailing addresses may be available from online marketplaces." [131] at p. 7. Plaintiffs did not have access to this information.

### B. Plaintiffs Did Not Have the Return Shipping Label Addresses When Their 4(f)(3) Motion Was Filed.

The Order states that "plaintiffs neglected to mention an important source of information" in failing to disclose return addresses that appeared on packages shipped by Defendants and produced for the first time in Defendants' Reply [117]. [131] at pp. 7, 14. As the Court acknowledges, the screenshots filed by Plaintiffs in support of their 4(f)(3) Motion did not include images of any received packages or addresses associated with Defendants. [131] at p. 6 (referring to [17] through [19]); [114-1]. As the Court further acknowledges, Plaintiffs' screenshots show that Plaintiffs ordered products from Defendants and had them shipped to an Illinois address. *Id*. Plaintiffs did not hide from the Court that Plaintiffs would likely eventually receive products from Defendants. Rather, the packages had not been received and processed by Plaintiffs before Plaintiffs filed the Complaint and their Rule 4(f)(3) Motion.[3] Moreover, no package for store Shop513892 ever arrived[4], so there is no return address. Gaudio Declaration at ¶4.

---

[3] As part of Plaintiffs' due diligence investigation, a purchase from the Internet store is typically performed. Gaudio Declaration at ¶3. This purchase usually takes two to eight weeks to arrive from China, if the product ever arrives. *Id.* The buys are shipped to Plaintiffs' counsel and are typically processed within a few weeks of receipt. *Id.* Plaintiffs' counsel regularly handle over 1,000 packages per month. *Id.*

To keep up with the rampant infringement by China-based Internet counterfeiters and to protect consumers from being duped into purchasing counterfeits online, Plaintiffs file new lawsuits against China-based Internet stores about every three weeks. *Id.* at ¶4. In most cases, Plaintiffs file a lawsuit before any products arrive and are processed, because it is clear from the product listings that the Internet stores are using counterfeit trademarks in connection with the sale of unauthorized products in violation of the Lanham Act. *Id.* at ¶4; *see also* [16] at ¶27 explaining how products are determined to be counterfeit.

[4] As described below, none of the names on the return address labels match the Defendants' store names as listed on AliExpress and in the Amended Complaint, so Plaintiffs would need to link the received products to Defendants by the tracking numbers.

**C. The Names on the Return Shipping Labels Do Not Match Any of the Named Defendants.**

According to Article I of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." Hague Convention, Article I. For an address to be known in this context, the address must be real, and a defendant as named in the complaint must be located at that address to facilitate service under the Hague Convention. The return addresses in Defendants' Composite Exhibit A [117-1] do not provide any credible information linking the named Defendants to those addresses. As shown in the chart below, none of the names on the return address labels match the Defendants' store names as listed on AliExpress and in the Amended Complaint. Additionally, only four unique return addresses were included in Defendants' Composite Exhibit A [117-1] for six different Defendants.

| Four (4) Return Address Names | Six (6) Moving Defendants' Store Names |
|---|---|
| 1. TY18<br>2. Donna Eyewear<br>3. Wangyuanyuan<br>4. Yongde wu | 1. belmon official store<br>2. donna official store<br>3. Shop513892 Store<br>4. story boutique store<br>5. who cutie glasses factory store<br>6. woo shao's store |

Based on the return addresses, Plaintiffs did not and could not have determined each of Defendants' true names and addresses for service. *See Gianni Versace, S.P.A. v. Yong Peng, at al.,* No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) ("That is precisely the case here: the eBay Internet store identified with Shop2827057 provided no physical address or identification of the owner. Since Versace did not and could not have known Shop2827057's true name or address, the Hague Convention does not apply and court-directed service was proper under Rule 4(f)(3)."). Moreover,

5

whether a purported address may exist does not demonstrate that this information was public or readily available to Plaintiffs at the time they attempted to locate Defendants for the purposes of service. *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, 2018 U.S. Dist. LEXIS 169603, at *9-10 (S.D.N.Y. 2018) ("Feng Tao submits affidavits and exhibits that purport to demonstrate that Feng Tao owns or owned properties….does not shed any light on whether Plaintiff exercised reasonable diligence in attempting to discover a physical address for Defendants for service of process under the Hague Convention."). Since none of the names in the purported return addresses matched the Defendants' store names as listed on AliExpress and in the Amended Complaint, additional investigation in China to determine whether the return addresses were real or not was not necessary to establish reasonable due diligence.

### D. Plaintiffs' Due Diligence Was Reasonable.

Plaintiffs' due diligence was reasonable when considered under the correct facts, namely that: (1) Plaintiffs did not have access to Defendants' names and addresses as purportedly registered with AliExpress; (2) Plaintiffs had not yet received and processed the products shipped by Defendants when their 4(f)(3) Motion was filed; and (3) None of the names on the return address labels matched the Defendants' store names as listed on AliExpress and in the Amended Complaint. Due diligence must also be considered in the broader context of this case, and the widespread and massive problem of trademark counterfeiting by vast numbers of anonymous online sellers in China. The Order suggests that "a Chinese address has been found to be unknown where the plaintiff hired an investigator in China to determine whether the physical addresses associated with domain names were valid." [131 at p. 8]. However, at an average cost of $1,500

USD per investigation[5], it would cost Plaintiffs millions of dollars annually[6] to hire an investigator in China for every potential address for every Internet store selling counterfeits that Plaintiffs encounter. In the meantime, Defendants' unauthorized use of Plaintiffs' Trademarks would continue to harm U.S. consumers who are duped into purchasing counterfeit products and Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' respective reputations, loss of exclusivity, and loss of future sales. That harm would continue to accumulate day by day, week by week, month by month while such investigations were pending.

Reasonable due diligence must be considered in the context of what information was available to Plaintiffs regarding Defendants and Defendants' addresses, and in the broader context of massive amounts of trademark counterfeiting by anonymous China-based Internet store operators.

### III. The Court's Order Regarding Email Service Is Based on Nonbinding Dicta in Cases that Do Not Address or Even Mention Fed. R. Civ. P. 4(f)(3)

The Supreme Court has not provided guidance as to how the requirements of the Hague Convention interact with a Court's authority to order alternative service under Rule 4(f)(3). *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 192642, at *7 (E.D. La. 2015). Nevertheless, the foundation of the Order [131] is based on dicta by the Supreme Court in *Schlunk* and *Water Splash* that states the Convention "pre-empts inconsistent methods of service . . . [wherever] it applies" to conclude that the drafters of the Hague Convention intended

---

[5] Gaudio Declaration at ¶5.

[6] Trademark counterfeiting is a massive problem for Plaintiffs due to vast numbers of anonymous online sellers in China. Gaudio Declaration at ¶6. From 2016 – 2018 Plaintiffs filed over 55 lawsuits naming over 70,000 unique Internet stores selling unauthorized products using counterfeit Oakley and/or Ray-Ban trademarks. Gaudio Declaration at ¶6. $1,500 per investigation x 70,000 Internet stores = $105 million.

to prohibit a method of service[7] not mentioned in its text. [131] at p. 10. The Order treats dicta in *Schlunk*[8] and *Water Splash* as binding even though neither case holds or even suggests that the Hague Convention must always be complied with before alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is ordered. *See Strabala v. Zhang*, 318 F.R.D. 81, 115 n.36 (N.D. Ill. 2016) ("…Volkswagenwerk 'does not hold or even suggest that the Hague Convention must always be complied with before alternative service is ordered,' and that the quoted language from that case is 'dictum.'"); *see also U.S. v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) ("[D]ictum is not authoritative. It is the part of an opinion that a later court, even if it is an inferior court, is free to reject.); *Michael C. Dorf, Dicta and Article III*, 142 U. Pa. L. Rev. 1997, 2000-01 (1994) ("Dicta are less carefully considered than holdings, and, therefore, less likely to be accurate statements of law. [Additionally] dicta have no precedential effect because courts have legitimate authority only to decide cases, not to make law in the abstract.").

Since dicta in *Schlunk* and *Water Splash* is not authoritative on alternative service under Rule 4(f)(3), it is appropriate for this Court to consider the two Circuit Court decisions that do address Rule 4(f)(3). [131] at p. 11, n.5, n.7. For example, the Order found the Fifth Circuit case *Nagravision SA v. Gotech* unpersuasive "because it does not reconcile its holding with *Schlunk* or *Water Splash*." [131] at p. 11, n.7. However, it is proper for the Court to consider the holding in *Nagravision SA v. Gotech* (that The Hague Convention does not displace Fed. R. 4(f)(3)) because

---

[7] The only example cited by the Order of a non-enumerated method of service prohibited by the Hague Convention, notification au parquet, was intended to be eliminated by the drafters of the Hague Convention because it did not provide notice to defendants. *Schlunk*, 486 U.S. at 703. Notification au parquet permitted service of process on a foreign defendant by the depositing of documents with a designated local official, but the statute of limitations began to run from the time the official received the documents, and there was no sanction for failure to transmit the documents to the defendant. *Id*. Email, which was unknown to the drafters of the Hague Convention, is very different as it provides immediate notice to a foreign defendant.

[8] *Schlunk* was decided in 1988, before the inclusion of subsection Fed. R. Civ. P. 4(f)(3) in 1993.

8

*Nagravision's* holding is not inconsistent with *Schlunk* or *Water Splash*[9]. *See also Gianni Versace, S.P.A. v. Yong Peng, at al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) *citing Nagravision SA v. Gotech* ("The Hague Convention does not displace Fed. R. 4(f)(3).").

For the same reason, the Court should have considered numerous cases cited by Plaintiffs finding email service proper on China-based defendants. For example, Plaintiffs cited *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, which found that "[m]any cases have 'declined to extend countries' objections to specific forms of service permitted by Article 10 of the Hague Convention, such as postal mail, to service by other alternative means, including email." *Sulzer Mixpac*, 312 F.R.D. at 331. The Order only cites *Sulzer Mixpac* as "exemplif[ying] another approach." [131] at p. 13. Plaintiffs also cited *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, but the Order dismisses the holding of this case as "stated without any further analysis," and because the physical addresses were unknown in the Northern District of California case cited by *MacLean-Fogg Co.* [131] at p. 11.

Neither the Order nor Defendants' filings cite <u>any case</u> finding that email service is improper with respect to China-based defendants. The Order relies only on cases involving service upon defendants based in countries other than China. [131] at pp. 13-14. None of these cases were cited in the parties' briefing and these cases are factually distinguishable because Switzerland (*Elobied v. Baylock*), Germany (*Agha v. Jacobs*), and Mexico (*Compass Bank v. Katz*) do not have China's excessive delay and online counterfeiting issues. *See* Plaintiffs' Response at pp. 1-3. The

---

[9] The Order disregards other cases in this district as having "little persuasive value" because "there is no indication that plaintiffs' counsel brought to the court's attention the contrary legal authority discussed in this order or the fact that the plaintiff had access to return addresses." [131] at p. 14. This statement is factually inaccurate for two reasons. The return address issues are discussed above. Additionally, the cases cited in the Order are not "contrary legal authority" as none of them pertain to email or electronic service under Rule (4)(f)(3) against China-based defendants.

Court also relies on dictum from *Jian Zhang v. Baidu.com Inc*. to suggest that "China's objections likewise preclude email service." [131] at p. 14. However, such reliance is misplaced as *Jian Zhang v. Baidu.com Inc.* explicitly did not reach this decision, instead stating: "The Court need not address that issue given that service on counsel is appropriate." *Zhang v. Baidu.com Inc*., 293 F.R.D. 508, 515 n.2 (S.D.N.Y. 2013).

## CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court reconsider its Memorandum Opinion and Order [131] granting Defendants' Omnibus Motion to Dismiss the Amended Complaint [102, 117].

Dated this 31st day of May 2019.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A and Oakley, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of May 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will sent a "Notice of E-Filing" to all attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
RiKaleigh C. Johnson
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
rjohnson@gbc.law

*Counsel for Plaintiffs Luxottica Group S.p.A. and Oakley, Inc.*