**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUXOTTICA GROUP S.p.A. and Oakley, Inc., | ) ) Case No. 18 CV 2188 |
| Plaintiffs, | ) ) Judge Joan B. Gottschall |
| v. | ) ) |
| The Partnerships and Unincorporated Associations Identified on Schedule "A," | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs move for reconsideration of the court's memorandum opinion and order dated May 24, 2019, ECF No. 131 (cited herein as "slip op."), granting the motion of six defendants ("defendants"), all of which are based in China, to dismiss for improper service. In summary, the court found that the Hague Service Convention[1] applied to defendants, that plaintiffs had not exercised reasonable diligence to identify defendants' addresses, and that the temporary restraining order authorizing service under Federal Rule of Civil Procedure 4(f)(3) by email and by posting on a website was inconsistent with the Hague Service Convention. Familiarity with the opinion will be presumed.

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)) (quoting *Keene Corp. v. Int'l Fid. Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). Because "'manifest error' is not demonstrated by the disappointment of the losing party," *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir.

---

[1] The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Service Convention"), 20 U.S.T. 361.

1

2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)), a motion for reconsideration is no place for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion," *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004) (quoting *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270). Hence, "[t]he repetition of previous arguments is not sufficient to prevail" on a motion to reconsider, *id* (quoting *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 165 n.9 (1st Cir. 2004), unless the court misunderstood the argument in the first place, *see Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191–92 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). The party seeking reconsideration bears the burden of explaining why the court should change its mind. *Ahmed*, 388 F.3d at 249. With the exception of one defendant for which a clearer record is needed, plaintiffs have not carried their burden.

### Factual Issues

Plaintiffs first attack the court's conclusion that plaintiffs did not exercise reasonable diligence to identify defendants' mailing addresses. Slip op. at 5–8. The attack is based on three primary factual premises and a policy argument concerning the burden of investigating potential addresses in China. *See* Mot. to Reconsider 6–7, ECF No 132. All could have been raised in plaintiffs' sur-reply, ECF No. 120, and that is reason enough to deny reconsideration. *Goplin v. WeConnect, Inc.*, 893 F.3d 488 (7th Cir. 2018); *Ahmed*, 388 F.3d at 249 (citation omitted).

The first premise is that addresses were potentially available from the company that hosted defendants' online stores. One of plaintiffs' lawyers, Justin R. Gaudio, avers that Alibaba, Inc.'s ("Alibaba") in-house counsel stated on an unspecified date that producing the names and addresses of store owners would violate Chinese privacy law. Decl. of J. Gaudio ¶ 2,

May 31, 2019, ECF No. 132-1. The point appears to be that Alibaba would refuse to produce defendants' names and mailing addresses, and this court would have no power to compel the disclosure.[2] Not only is plaintiffs' evidence hearsay, *see* Fed. R. Evid. 801, 802, but plaintiffs have also given no reason why they could not have made this argument during the briefing on the motion to dismiss. Had they done so, the parties might have explored the content of Chinese privacy law, Alibaba's amenability to this court's orders, and defendants' willingness to waive any protections Chinese law affords them. A motion for reconsideration does not give a party a "do over" on the original motion. *Hutchens v. McDonogh*, 2013 WL 11322823, at *1 (N.D. Ill. Oct. 28, 2013).

Second, plaintiffs assert that defendants' potential addresses were unknown to them because they received the packages ordered from defendants after they filed their motion for an order allowing email service.[3] But he court's analysis did not turn on a finding of the date on which plaintiffs received packages. The court instead concluded that return address labels were "an important source of information" of which plaintiffs were aware (from other cases) and for which plaintiffs should have waited (or at the very least plaintiffs should have advised the court of the possibility of receiving shipping labels). *See* slip op. at 7–8. Plaintiffs do not challenge the court's legal conclusion that the Hague Service Convention requires them to conduct a reasonable investigation of possible addresses for defendants.[4] Slip op. at 6 (quoting *Advanced*

---

[2] The evidence to this point has shown that AliExpress, Inc., ("AliExpress") hosted defendants' stores. *See, e.g.*, slip op. at 2. Presumably, AliExpress and Alibaba are related, but plaintiffs shed no light on their exact relationship and why Alibaba's counsel's statements would bind AliExpress.

[3] As with the prior argument, plaintiffs give no reason why they could not have made these arguments in their surreply. *See* slip op. at 7 (quoting arguments made in sur-reply). Plaintiffs' failure to explain why these arguments were unavailable to them is an independently sufficient reason to deny reconsideration.

[4] Plaintiffs assert that "[d]ue diligence must also be considered in the broader context of this case, and the widespread and massive problem of trademark counterfeiting by vast numbers of anonymous online sellers in China." Mot. to Reconsider 6. They cite no authority, however. *See id.* Plaintiffs waived this one-sentence argument by inadequately developing it. *See, e.g.*, *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (("[P]erfunctory and undeveloped arguments, and arguments that are

3

*Access Content Sys. Licensing Admin., LLC v. Shen*, 2018 WL 4757939, at *5 (S.D.N.Y. Sept. 30, 2018)). Plaintiffs have not demonstrated that the court manifestly erred. On the contrary, Gaudio's declaration attached to plaintiffs' motion to reconsider bolsters the court's findings. Gaudio avers:

> 3. As part of Plaintiffs' due diligence investigation, a purchase from an Internet store is typically performed. This purchase usually takes two to eight weeks to arrive from China. For some stores, the product never arrives. The buys are shipped to Plaintiffs' counsel and are typically processed within a few weeks of receipt. Plaintiffs' counsel regularly handle over 1,000 packages per month related to China-based Internet store buys.
>
> 4. To keep up with the rampant infringement by China-based Internet counterfeiters and to protect consumers from being duped into purchasing counterfeits online, Plaintiffs filed new lawsuits against China-based Internet stores about every three weeks during the period of 2016-2018. In most cases, Plaintiffs file a lawsuit before any products arrive and are processed because it is clear from the product listings that the Internet stores are using counterfeit trademarks in connection with the sale of unauthorized products in violation of the Lanham Act. Plaintiff's counsel was unable to identify any package received from Defendant Shop513892 Store.

*E.g.*, Decl. of J. Gaudio ¶¶ 3–4, May 31, 2018, ECF No. 132-1. Gaudio confirms that plaintiffs regularly receive packages showing China-based addresses for the allegedly counterfeit goods plaintiffs purchase. *See id.* ¶ 3. Plaintiffs' desire for speed is understandable, but following counsel's timelines, plaintiffs would have had to wait at most six weeks to see whether packages with potential addresses for defendants would arrive. Six weeks is less than the 90 days plaintiffs ordinarily have to serve a complaint and summons. Fed. R. Civ. P. 4(m). Plaintiffs do not explain why the damages they have sought and obtained—$1 million in statutory damages— would not make them whole. These plaintiffs, and similarly situated plaintiffs, have consistently told the court that the danger of defendants' closing online counterfeiting operations and absconding with their ill-gotten gains arises after offshore counterfeiters receive notice of the

---

unsupported by pertinent authority, are waived. . . .") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)) (alterations omitted)).

suit, not before. *E.g.*, Decl. of J. Gaudio ¶¶ 5–7, Mar. 28, 2018, ECF No. 15. Plaintiffs have therefore not demonstrated a manifest error in the court's conclusion that they failed to conduct a reasonable investigation.

However, the court cannot evaluate the significance, if any, of Gaudio's averment that a shipment associated with defendant Shop513892 Store has not been located. Decl. of J. Gaudio ¶ 4, May 31, 2019, ECF No. 132-1. The shipping labels supplied by defendants show legible addresses, but they appear to be written primarily in the Chinese language. *See* ECF No. 117-1. The products plaintiffs allegedly ordered cannot be correlated with defendants' alleged shipments on this record. As a result, the court cannot determine whether the record gives reason to believe that this defendant shipped a product to plaintiffs or, alternatively, that it shipped a product, but it was not received. The parties should be prepared to propose a plan to resolve this issue at the next status hearing.

Third, plaintiffs point out that the names on the return address labels do not match the names of the online store from which the product was ordered, but they cite no authority allowing them to disregard an address because names do not match perfectly. *See* Mot. to Reconsider 9. Plaintiffs cannot ignore a lead like the return addresses. They must conduct reasonable investigation of a "*purported* mailing address." Slip op. at 8 (emphasis added). As the court has concluded, generalized assumptions about the invalidity of an address do not suffice and "the fact that defendants allegedly offer counterfeit goods for sale does not automatically mean that every address listed for them is invalid or that they are evading service of process. More specific proof is needed." Slip op. at 8. Plaintiffs did not adduce any such defendant-specific proof on the original motion, and they have done no better on reconsideration.

Plaintiffs next make a policy argument. They represent that they have filed more than 55 suits naming more than 70,000 unique online stores as defendants in 2016–18. Mot. to Reconsider 7 n.6. Gaudio estimates that it would cost $1,500 to investigate each Chinese address, so plaintiffs may have to pay millions to protect their intellectual property rights. Decl. of J. Gaudio ¶ 6, May 31, 2019, ECF No. 132-1. By citing a case in which the plaintiff hired a private investigator, this court did not require a similar investigation of every China-based defendant. *See* slip op. at 8. What is reasonable in any given case must be litigated in that case on its unique facts. In any event, if plaintiffs are successful, certain expenses associated with serving process may sometimes be taxed as costs. *See Collins v. Gorman*, 96 F.3d 1057, 1058–71 (7th Cir. 1996). Moreover, plaintiffs overstate the costs here. Of the 906 defendants plaintiffs sued, six have appeared and moved to dismiss. As plaintiffs note, four of the shipping label addresses associated with the moving defendants are unique, so the cost of an investigation comes to at most $6,000, not millions. For all of these reasons, plaintiffs' cost-based arguments do not demonstrate manifest error.

## **Legal Issues**

As for supposed legal errors, plaintiffs maintain that the memorandum opinion and order is grounded on dicta in the leading Supreme Court cases applying the Hague Service Convention. Mot. to Reconsider 7–10. This and plaintiffs' other arguments refine positions taken in their briefing on the motion to dismiss. This is improper because "[a] motion for reconsideration is an improper vehicle to introduce . . . new legal theories." *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986).

In any event, the court made no such error. In both cases, the Supreme Court stated that "the Hague Service Convention 'specifies certain approved methods of service and 'pre-empts

6

inconsistent methods of service' wherever it applies.'" *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)), quoted in slip op. at 5. This broad pronouncement does not conclusively settle the precise questions here for neither *Schlunk* nor *Water Splash* involved Rule 4(f)(3) or email service.[5] Several cases involving email say as much. *See, e.g.*, *Strabala v. Zhang*, 318 F.R.D. 81, 115 n.36 (N.D. Ill. 2016) (citing *In re GLG Life Tech. Corp. Secs. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012)) (dictum).

It was nevertheless appropriate for this court to look to *Schlunk* and *Water Splash*'s reasoning. The Supreme Court's reasoning on a related legal issue deserves serious and respectful consideration. *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (citing *Cohens v. Virginia*, 6 Wheat. 264, 399 (1821)). *Schlunk's* reasoning guided the court's analysis, as when the court observed that "the Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text." Slip op. at 10. And this court declined to follow a Fifth Circuit case because it did not attempt to harmonize the reasoning of *Schlunk* and *Water Splash*.[6] Slip op. at 11 n.7 (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018)).

Finally, plaintiffs observe that the court cited no case finding email service to be improper in China (though dicta in several cases were cited). *See* Mot. to Reconsider 9–10. Plaintiffs do not engage with the court's analysis of China's objections under Article 10(a) of the Hague Service Convention. The court determined that China's objections are at least as broad as

---

[5] If it did, the court's extensive analysis would have been unnecessary.

[6] The May 24, 2019, opinion incorrectly states that plaintiffs failed to cite *Nagravision* in their briefing. The opinion is amended to delete this statement.

7

the objections of other nations, such as Switzerland and Germany, which courts have found preclude email service. *See* slip op. at 13–14. Instead of grappling with China's objections, plaintiffs again urge the court to adopt the reasoning of cases such as *Sulzer Mixpac AG v. Medenstar Indus. Co. Ltd.*, 312 F.R.D. 329 (S.D.N.Y. 2015). *See* Mot. to Reconsider 9–10. The court discussed *Sulzer Mixpac* and similar cases in its opinion but found another line of authority more persuasive. *See* slip op. at 13. Plaintiffs disagree with the court's analysis in their motion to reconsider[7] but cite no authority not already considered by the court. *See* ECF No. 132 at 7, Mot. to Reconsider 10. Rehashing an argument and expressing disagreement with the court's analysis does not demonstrate a manifest error. *See Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). Plaintiffs have therefore failed to demonstrate a manifest error of law.

\* \* \*

For the reasons stated, plaintiffs' motion for reconsideration, ECF No. 132, is denied except as to defendant Shop513892 Store.

Date:  June 4, 2019                                  /s/
                                                    Joan B. Gottschall
                                                    United States District Judge

---

[7] Plaintiffs assert in a footnote that it is unclear whether the court considered a case they cited in a notice of supplemental authority filed after briefing on the original motion closed, *see Gianni Versace, S.p.A. v. The Partnerships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 18 C 5385. Order (N.D. Ill. Feb. 27, 2019) (ECF No. 70). Plaintiffs did not seek leave to file their notices of supplemental authority, so the court could have disregarded them. The court nevertheless exercised its discretion to consider all of the cases plaintiffs cited in their notices of supplemental authority. They do not alter the outcome. *Gianni Versace* relies on *Nagravision*, *supra*, for the proposition that the Hague Service Convention does not preempt Rule 4(f)(3). Slip op. at 2. This court continues to find *Nagravision* unpersuasive for the reasons given in its opinion. *Gianni Versace* appears distinguishable for an additional reason. Unlike in this suit, the Hague Service Convention did not apply in *Gianni Versace* because the defendant's address was unknown. *See Gianni Versace*, slip op. at 2 (stating that "email service of an online business defendant is warranted when the defendant has no readily discoverable physical address, conducts business over the Internet, and uses email regularly in contacting customers") (citation omitted)).